588 A.2d 328

**Sandra Ann CRAIG**

**v.**

**STATE of Maryland.**

**James T. GILBERT**

**v.**

**STATE of Maryland.**

**No. 110, Sept. Term, 1988.**
**No. 63, Sept. Term, 1990.**

Court of Appeals of Maryland.

April 8, 1991.

420

William H. Murphy, Jr. (M. Cristina Gutierrez, both on brief), Baltimore, for petitioner in No. 110.

Gary E. Bair, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Ann N. Bosse, Asst. Atty. Gen., all on brief), Baltimore, for respondent in No. 110.

Morris Lee Kaplan (Don E. Kaplan, both on brief), Baltimore, for appellant in No. 63.

Ann N. Bosse, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Gary E. Bair, Asst. Atty. Gen., Richard B. Rosenblatt, Asst. Atty. Gen., all on brief), Baltimore, for appellee in No. 63.

Argued before MURPHY, C.J., ELDRIDGE, RODOWSKY and McAULIFFE, CHASANOW, JJ., CHARLES E. ORTH, Jr., Judge of the Court of Appeals (retired), Specially Assigned, and RAYMOND G. THIEME, Jr., Judge of the Fifth Judicial Circuit of Md., Specially Assigned.

CHARLES E. ORTH, Jr., Judge, Specially Assigned.

The two cases covered by this opinion, *Sandra Ann Craig v. State of Maryland*, No. 110, September Term, 1988, and *James T. Gilbert v. State of Maryland*, No. 63, September Term, 1990, concern the testimony of the victim in a child abuse case by means of closed circuit television. Craig and Gilbert were each charged with child abuse as defined in Maryland Code (1957, 1987 Repl.Vol.), Article 27, § 35A, and related offenses. At each trial the victim was permitted to testify, over objection, by means of closed circuit television. Craig and Gilbert each challenge the propriety of that procedure. Inasmuch as the two cases share that common issue, we called for them to be argued on the same day, and we decide them both in this opinion.

I

Some six years ago, in Acts 1985, ch. 499 (H.B. 1346) and ch. 495 (S.B. 555), the General Assembly of Maryland evinced its deep concern about "the psychological harm to a child victim testifying in a child abuse case...." The chapters enacted identical provisions which were codified in the Courts and Judicial Proceedings Article of the Maryland Code (1973, 1989 Repl.Vol.) as § 9–102. The legislation fashioned a comprehensive scheme which authorized a pro-

cedure for the receipt of testimony of the victim in a child abuse case by means of closed circuit television. One of the detailed conditions for the invocation of the procedure called for the trial judge to determine that testimony by the child victim in the courtroom will result in the child suffering serious emotional distress such that the child cannot reasonably communicate. § 9–102(a)(1)(ii). The statute has been the subject of opinions in *Wildermuth v. State,* 310 Md. 496, 530 A.2d 275 (1987); *Craig v. State,* 76 Md.App. 250, 544 A.2d 784 (1988); *Craig v. State,* 316 Md. 551, 560 A.2d 1120 (1989) (*Craig I*); and *Maryland v. Craig,* 497 U.S. ——, 110 S.Ct. 3157, 111 L.Ed.2d 666 (1990). *Coy v. Iowa,* 487 U.S. 1012, 108 S.Ct. 2798, 101 L.Ed.2d 857 (1988), although not directly concerned with § 9–102, influenced our holdings in *Craig I* and played a part in the Supreme Court's *Craig.* Our opinion delivered today provides the latest word on the statute.

## II

### *The Sandra Ann Craig Case*

#### A

On 16 October 1986, a Howard County grand jury returned an indictment charging Sandra Ann Craig with child abuse, first and second degree sexual offense, perverted practice, assault, and battery. A jury in the Circuit Court for Howard County convicted her on all counts, and she was sentenced to terms of imprisonment totalling 10 years. The Court of Special Appeals affirmed the judgments on direct appeal. *Craig v. State,* 76 Md.App. 250, 544 A.2d 784. We reversed the judgment of the Court of Special Appeals on grant of her petition for a writ of certiorari. *Craig v. State,* 316 Md. 551, 560 A.2d 1120 (*Craig I*). The Supreme Court of the United States vacated our judgment on grant of the State's petition for certiorari, and remanded the case to us for consideration in the light of its opinion. *Maryland v. Craig,* 110 S.Ct. 3157. In compliance with the direction of the Supreme Court, we ordered the case to be re-briefed and re-argued, and it is now again before us.

B

■ Craig owned and operated a kindergarten and pre-kindergarten center. The center was the site of the offenses of which she was convicted, and the alleged victim was a child six years of age who was entrusted to her care at the center.

When the case was about to go to trial, the State sought to invoke § 9–102. The section's protection was desired not only with respect to the victim named in the indictment, seven years old at the time of the trial, but also as to other children who had, according to the State, been abused by Craig. Despite Craig's confrontation-based objections, the named victim and three other children testified via one-way closed circuit television. The young witnesses, of course, could not see Craig while so testifying.

C

In *Maryland v. Craig,* 110 S.Ct. 3157, the Supreme Court reviewed our opinion in *Craig I.* It looked at § 9–102 in the light of federal constitutional dictates:

> This case requires us to decide whether the Confrontation Clause of the Sixth Amendment categorically prohibits a child witness in a child abuse case from testifying against a defendant at trial, outside the defendant's physical presence, by one-way closed circuit television.

*Id.* at 3160. The Supreme Court summarized our holdings:

> The Maryland Court of Appeals held, as we do today, that although face-to-face confrontation is not an absolute constitutional requirement, it may be abridged only where there is a " 'case-specific finding of necessity.' " 316 Md., at 564, 560 A.2d, at 1126 (quoting *Coy, supra,* 487 U.S., at 1025, 108 S.Ct., at 2805 (concurring opinion)). Given this latter requirement, the Court of Appeals reasoned that "[t]he question of whether a child is unavailable to testify ... should not be asked in terms of inability to testify in the ordinary courtroom setting, but in the much narrower terms of the witness's inability to testify in the presence of the accused." 316 Md., at 564, 560 A.2d, at

1126 (footnote omitted). "[T]he determinative inquiry required to preclude face-to-face confrontation is the effect of the presence of the defendant on the witness or the witness's testimony." *Id.*, at 565, 560 A.2d, at 1127. The Court of Appeals accordingly concluded that, as a prerequisite to use of the § 9–102 procedure, the Confrontation Clause requires the trial court to make a specific finding that testimony by the child in the courtroom *in the presence of the defendant* would result in the child suffering serious emotional distress such that the child could not reasonably communicate. *Id.*, at 566, 560 A.2d, at 1127. This conclusion, of course, is consistent with our holding today.

*Maryland v. Craig,* 110 S.Ct. at 3170 (emphasis in original). The Supreme Court went on to say:

In addition, however, the Court of Appeals interpreted our decision in *Coy* to impose two subsidiary requirements. First, the [C]ourt [of Appeals] held that "§ 9–102 ordinarily cannot be invoked unless the child witness initially is questioned (either in or outside the courtroom) in the defendant's presence." [316 Md.] at 566, 560 A.2d, at 1127; see also *Wildermuth,* 310 Md., at 523–524, 530 A.2d, at 289 (personal observation by the judge should be the rule rather than the exception). Second, the court asserted that, before using the one-way television procedure, a trial judge must determine whether a child would suffer "severe emotional distress" if he or she were to testify by *two*-way closed circuit television. 316 Md., at 567, 560 A.2d, at 1128.

110 S.Ct. at 3170 (emphasis in original). The Supreme Court observed:

Reviewing the evidence presented to the trial court in support of the finding required under § 9–102(a)(1)(ii), the Court of Appeals determined that "the finding of necessity required to limit the defendant's right of confrontation through invocation of § 9–102 ... was not made here." [316 Md.] at 570–571, 560 A.2d, at 1129. The Court of Appeals noted that the trial judge "had the benefit only

of expert testimony on the ability of the children to communicate; he did not question any of the children himself, nor did he observe any child's behavior on the witness stand before making his ruling. He did not explore any alternatives to the use of one-way closed circuit television." *Id.,* at 568, 560 A.2d, at 1128 (footnote omitted). The Court of Appeals also observed that "the testimony in this case was not sharply focused on the effect of the defendant's presence on the child witnesses." *Id.,* at 569, 560 A.2d, at 1129. Thus, the Court of Appeals concluded:

> "Unable to supplement the expert testimony by responses to questions put by him, or by his own observations of the children's behavior in Craig's presence, the judge made his § 9–102 finding in terms of what the experts had said. He ruled that 'the testimony of each of these children *in a courtroom* will [result] in each child suffering serious emotional distress ... such that each of these children cannot reasonably communicate.' He failed to find—indeed, on the evidence before him, *could not have found*—that this result would be the product of testimony in a courtroom in the defendant's presence or outside the courtroom but in the defendant's televised presence. That, however, is the finding of necessity required to limit the defendant's right of confrontation through invocation of § 9–102. Since that finding was not made here, and since the procedures we deem requisite to the valid use of § 9–102 were not followed, the judgment of the Court of Special Appeals must be reversed and the case remanded for a new trial." *Id.,* at 570–571, 560 A.2d, at 1129 (emphasis added).

*Maryland v. Craig,* 110 S.Ct. at 3070–3071. The Supreme Court stated:

The Court of Appeals appears to have rested its conclusion at least in part on the trial court's failure to observe the children's behavior in the defendant's presence and its failure to explore less restrictive alternatives to the use of the one-way closed circuit television procedure. See

[316 Md.] at 568–571, 560 A.2d, at 1128–1129. Although we think such evidentiary requirements could strengthen the grounds for use of protective measures, we decline to establish, as a matter of federal constitutional law, any such categorical evidentiary prerequisites for the use of the one-way television procedure.

110 S.Ct. at 3171. The Court commented:

The trial court in this case, for example, could well have found, on the basis of the expert testimony before it, that testimony by the child witnesses in the courtroom in the defendant's presence "will result in [each] child suffering serious emotional distress such that the child cannot reasonably communicate," § 9–102(a)(1)(ii). See [316 Md.] at 568–569, 560 A.2d, at 1128–1129; see also App. 22–25, 39, 41, 43, 44–45, 54–57. So long as a trial court makes such a case-specific finding of necessity, the Confrontation Clause does not prohibit a State from using a one-way closed circuit television procedure for the receipt of testimony by a child witness in a child abuse case.

110 S.Ct. at 3171. But, the Court opined:

Because the Court of Appeals held that the trial court had not made the requisite finding of necessity under its interpretation of "the high threshold required by [*Coy*] before § 9–102 may be invoked," 316 Md., at 554–555, 560 A.2d, at 1121 (footnote omitted), we cannot be certain whether the Court of Appeals would reach the same conclusion in light of the legal standard we establish today.

110 S.Ct. at 3171. This led to the vacating of our judgment and the remand. As ordered by the Supreme Court, we have now assessed our opinion in *Craig I* in light of its *Maryland v. Craig.*

### D

### (1)

The key to the *Craig* case is *Wildermuth v. State,* 310 Md. 496, 530 A.2d 275. It was in *Wildermuth* that we first determined that face-to-face confrontation is not an abso-

lute constitutional requirement. *Id.* at 518, 530 A.2d 275. We pointed out in that case that the type of confrontation permitted by § 9–102 can be constitutionally justified only upon a showing of witness unavailability—"that is, a degree of necessity that supports use of a procedure ... that would otherwise not satisfy the confrontation requirements." 310 Md. at 520, 530 A.2d 275. We were content that if testimony in open court will result in the child witness's suffering serious emotional distress, there is sufficient unavailability to satisfy the constitutional confrontation requirement. *Id.* at 519, 530 A.2d 275. We turned to the statute, and particularly § 9–102(a)(1)(ii), to determine the legislative intent. We were satisfied that the standard set by that subsection was that "ordinarily the judge should observe and question the child." 310 Md. at 524, 530 A.2d 275. We opined:

> While personal observation by the judge may not be a *sine qua non* under § 9–102, it should be the rule rather than the exception.

*Id.* at 523–524, 530 A.2d 275. We added that the statute calls for testimony about the likely impact on the particular child which shows "much more than mere nervousness or excitement or some reluctance to testify." *Id.* at 524, 530 A.2d 275. We were of the view that there must be a case-specific finding upon a particularized examination of all the circumstances concerning the impact of public testimony in the presence of the defendant upon the emotional health of the child. *Id.* at 525, 530 A.2d 275. We said:

> While the testimony need not be given in the precise words of the statute it must be clear that the statutory requirements are met in substance.

*Id.* at 524, 530 A.2d 275. We warned:

> Testimony about the likely impact on the child testifying must be definite, related to the statutory standard and specific to the potential child witness him or herself.

> *Id.*

We concluded in *Wildermuth* that the statutory requirements were not met in substance. The trial judge "never

questioned or even observed the child witness before he made his ruling." *Id.* at 523, 530 A.2d 275. He heard only testimony from experts, and their testimony did not sufficiently relate to the requirement of § 9–102(a)(1)(ii) that testimony in the courtroom "will result in the child suffering serious emotional distress such that the child cannot reasonably communicate." The testimony of one expert, we discovered, "related chiefly to young children in general, and at the most suggested that the child (or any child) would find it 'hard to respond at all in the courtroom.'" *Id.* "But 'hard to respond,'" we noted, "does not come close to 'serious emotional distress such that the child cannot reasonably communicate.'" *Id.* The testimony of the other expert was more specific, "[b]ut she, too, spoke to some extent in terms of all children as a group." *Id.* We warned:

> [A] judge's subjective and self-justifying recollections of a child's demeanor, absent support in the record, will not be enough to justify a finding that limits the right of confrontations.

*Id.* at 524, 530 A.2d 275. We held that the evidence in Wildermuth's case was not enough. We reversed and remanded for further proceedings. *Id.* at 525, 530 A.2d 275.

(2)

Craig's trial followed a scenario like that of Wildermuth. The Circuit Court for Howard County heard only expert testimony as to whether § 9–102(a)(1)(ii)'s threshold had been crossed. The judge did not question or interview any of the child witnesses, nor were any of them called to the witness stand in Craig's presence, in an attempt to produce testimony in that fashion. *See Craig I* [316 Md.] at 555, 560 A.2d 1120. The judge ruled:

> There's been evidence presented and based upon the evidence presented I find that the testimony of each of these children in a courtroom will [result] in each child suffering serious emotional distress and such that each of these children cannot reasonably communicate and ac-

cordingly I believe there's a need and it's appropriate to direct that the testimony of these children be provided by way of closed circuit television consistent with the provisions of Section 9–102....

See id. at 555–556, 560 A.2d 1120.

Our focus in *Craig I*, as it was in *Wildermuth*, was on " '[t]he only reliability function not substantially provided by one-way closed-circuit television'—the truth-enhancing trial procedure of face-to-face confrontation." 316 Md. at 563, 560 A.2d 1120. We pointed out that we held in *Wildermuth* that " '[t]he degree of confrontation allowed by § 9–102 ... satisfies the constitutional requirements if there is compliance with subsection (a)(1)(ii) as a condition precedent to application of the statute.' " *Craig I* at 563, 560 A.2d 1120, quoting *Wildermuth* [310 Md.] at 520, 530 A.2d 275. The evidence at Craig's trial was no more sufficient to show compliance with subsection (a)(1)(ii) than it was in Wildermuth's trial. As was the case in *Wildermuth*, at Craig's trial "[w]hen the trial judge made his § 9–102 determination, the finding that authorized the use of closed circuit television, he had the benefit only of expert testimony on the ability of the children to communicate; he did not question any of the children himself, nor did he observe any child's behavior on the witness stand before making his ruling." *Craig I*, 316 Md. at 568, 560 A.2d 1120. We pointed out that in *Wildermuth* we said that "testimony about the likely impact on the particular child must be specific and must show more than mere nervousness or excitement or some reluctance to testify." 316 Md. at 569, 560 A.2d 1120, quoting *Wildermuth*, 310 Md. at 524, 560 A.2d 1120. We posited that it was even more critical that the particularized examination of all the circumstances must focus on the impact of public testimony in the presence of the defendant upon the emotional health of the child. 316 Md. at 569, 560 A.2d 1120. Thus, the testimony at Craig's trial, like the testimony at Wildermuth's trial, did not, in substance, meet the standards of § 9–102(a)(1)(ii). It is for that reason that we again reverse the judgment of the

Court of Special Appeals and remand the case for a new trial.

## III

■ Craig implores us not to be bound by the Supreme Court's interpretation of the Confrontation Clause of the Sixth Amendment to the federal constitution in our interpretation of that clause in Article 21 of Maryland's Declaration of Rights.[1] She urges that, as to Article 21, we follow Justice Scalia's interpretation of the clause in his dissent in *Maryland v. Craig*. Justice Scalia posited:

> [T]hat the defendant should be confronted by the witnesses who appear at trial is not a preference "reflected" by the Confrontation Clause; it is a constitutional right unqualifiedly guaranteed.

110 S.Ct. at 3173 (Scalia, J., dissenting). The two Confrontation Clauses are in *pari materia*. *Moon v. State*, 300 Md. 354, 359, 478 A.2d 695 (1984), *cert. denied*, 469 U.S. 1207, 105 S.Ct. 1170, 84 L.Ed.2d 321 (1985). *See Crawford v. State*, 282 Md. 210, 211, 383 A.2d 1097 (1978); *State v. Collins*, 265 Md. 70, 75, 288 A.2d 163 (1972). With regard to the issue before us, we decline to construe the Confrontation Clause of Article 21 differently from the Supreme Court's construction of the Confrontation Clause of the Sixth Amendment.

## IV

■ We have seen that in *Wildermuth* and *Craig I* we held that to invoke § 9–102 there must be a case-specific

---

1. In all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him....
U.S. Const. amend. VI. This clause is made applicable to the states through the Fourteenth Amendment. *Pointer v. Texas*, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965), and *Douglas v. Alabama*, 380 U.S. 415, 85 S.Ct. 1074, 13 L.Ed.2d 934 (1965).
  "[T]he People of the State of Maryland ... declare": That in all criminal prosecutions, every man hath a right ... to be confronted with the witnesses against him.
Md. Declaration of Rights, Art. 21.

finding that testimony by the child in the courtroom in the presence of the defendant would result in the child suffering serious emotional distress such that the child could not reasonably communicate. 316 Md. at 564–565, 560 A.2d 1120. We thought that this was required by the statute and the Confrontation Clauses. The Supreme Court agreed that it was constitutionally required. *Maryland v. Craig,* 110 S.Ct. at 3170. But then, in *Craig I,* we added two subsidiary requirements: (1) § 9–102 ordinarily cannot be invoked unless the child witness initially is questioned (either inside or outside the courtroom) in the defendant's presence, 316 Md. at 566, 560 A.2d 1120; and (2) before using a one-way closed circuit television procedure, the judge must determine whether a child would suffer "severe emotional distress," if the child were to testify by a two-way closed circuit television procedure, *id.* at 567, 560 A.2d 1120. The first subsidiary requirement had two parts: (a) the initial questioning of the child by the judge; and (b) the presence of the defendant at the questioning. We found in *Wildermuth* that (a) was required by § 9–102, but we did not focus on (b). In *Craig I* we focused on (b) as being constitutionally required under *Coy.* The Supreme Court did not indicate that the child need never be preliminarily observed and questioned by the judge, but it "decline[d] to establish as a matter of federal constitutional law, any such categorical evidentiary prerequisites for the use of the one-way television procedure." 110 S.Ct. at 3171. The Supreme Court recognized, however, that "such evidentiary requirements could strengthen the grounds for use of protective measures...." *Id.*

We do not think that the two subsidiary requirements should be jettisoned. We think that they should be preserved, not as commands, but as an aid to the trial judge, in appropriate circumstances, in the determination of the condition precedent prescribed by § 9–102(a)(1)(ii). We believe that it is proper that they be so preserved as within the legislative intendment of § 9–102. Again we look to *Wildermuth.* Once more we call attention to our observation,

made before *Coy* was decided, that "ordinarily the judge should observe and question the child," and that this "should be the rule rather than the exception." 310 Md. at 524. This holding was announced in the light of the Maryland statute. The same is true of the second subsidiary requirement. It reflects the legislative scheme implemented by the statute. We noted in *Craig I,* "Nothing in § 9–102 precludes [a two-way closed circuit television] procedure." 316 Md. at 567, 560 A.2d 1120. And we observed, "The use of such a procedure is consistent with a trial judge's broad discretion in conducting a criminal trial." *Id.*

We venture a word about expert testimony. We said in *Wildermuth* that "expert testimony may not be necessary to establish the necessary predicate [to invoke § 9–102]." 310 Md. at 524, 530 A.2d 275. "For example," we noted, "the testimony of a parent may be sufficient, when combined with the child's own testimony and judicial observation of the child." *Id.* On the other hand, the Supreme Court in *Maryland v. Craig,* 110 S.Ct. at 3171, suggested that "[t]he trial court in this case ... could well have found, on the basis of expert testimony before it, that testimony by the child witnesses in the courtroom in the defendant's presence" would fulfill the requirement of § 9–102(a)(1)(ii).

The steps to be taken by a trial judge when the State seeks to invoke the § 9–102 procedure over objection emerge clearly in the light of the statute and the holdings in *Wildermuth, Craig I,* and the Supreme Court's *Maryland v. Craig.*

(1) The trial judge shall make a case-specific finding of necessity.

    (a) Given this requirement, the question whether the child is available to testify shall be asked, not in terms of inability to testify in the ordinary courtroom setting, but in the much narrower terms of the witness's inability to testify in the presence of the accused.

(2) The question of the availability of the child to testify in the presence of the accused shall be determined,

ordinarily, by the judge personally observing and interviewing the child, on the record, either in or outside the courtroom. Although the personal observation and interview of the child is not a *sine qua non* under § 9–102, it should be the rule rather than the exception.

(a) The presence of the defendant at the judge's observation and interview of the child is within the discretion of the judge.

(i) In exercising that discretion, the trial judge should consider that the presence of the defendant may well aid in determining whether to invoke the statutory procedure.

(ii) If during an interview in which the judge has permitted the presence of the defendant, it appears that the defendant's presence is adversely affecting the child and the child's ability to communicate, the judge should have the defendant removed.

(3) In appropriate circumstances, expert testimony may not be essential to establish the necessary predicate for permitting the child to testify over closed circuit television.

(a) We believe it probable, however, that the prudent trial judge will, at least, consider expert testimony, when it is offered, as an aid in determining whether to invoke § 9–102.

(4) If the judge determines that the criteria of § 9–102 have been met, the means by which the procedure shall be effected is within the discretion of the trial judge. We believe that the prudent judge will consider the reasonable availability of measures which would be the least restrictive of the right of confrontation, yet serve the purpose of § 9–102, and seek to utilize such measures, if that can be accomplished without undue delay or inconvenience.[2]

---

2. Section 9–102 speaks only in terms of closed circuit television. Closed circuit television, as we understand it, may be one-way or two-way. For a detailed description of the one-way closed circuit

We think that this lead-in to the invocation of the § 9–102 procedure is not only consistent with the legislative scheme, but enhances it. We are content that the procedure satisfies the Legislature's intendment, even though it may not, in some part, be constitutionally compelled. *See Maryland v. Craig,* 110 S.Ct. at 3171.

## V

### *The James T. Gilbert Case*

On 6 January 1989, a grand jury in Baltimore City returned three true bills against James T. Gilbert, charging him with child abuse and a variety of other offenses against the person of his stepdaughter. The crimes were alleged to cover the period from 1 September 1987 to 1 December 1987.[3] The guilt stage of the trial began on 10 July 1989 before a jury in the Circuit Court for Baltimore City. On 13 July the jury returned verdicts of guilty as to child abuse, assault with intent to rape, third degree sexual offense, and assault. A motion for a new trial was heard and denied. Gilbert was sentenced to terms of imprisonment totaling 15 years. He appealed. Briefs were filed in the Court of Special Appeals, and the case was argued before a panel of

---

television procedure, *see Wildermuth v. State,* 310 Md. at 503–504, 530 A.2d 275.

We suggested in *Craig v. State,* 316 Md. 551, 567, 560 A.2d 1120 (1989), that the trial judge, upon exploring alternative measures, may discover that two-way closed circuit television would solve the problem. By this device, the child could testify "in a room separate from the courtroom, so that the accused is visible to the witness as well as vice versa." *Id.* "This type of procedure," we opined, " 'may raise no substantial Confrontation Clause problem since [it involves] testimony in the presence of the defendant.' " *Id.,* quoting *Coy v. Iowa,* 487 U.S. 1012, 1023, 108 S.Ct. 2798, 2804, 101 L.Ed.2d 857 (1988) (O'Connor, J., concurring).

**3.** An attachment to the indictments explained:

The victim involved in this case ... is twelve (12) years old. The facts of this case are that the offenses occurred over a period of time in which the victim was under the care and supervision of her stepfather. The State of Maryland is unable to determine with more particularity the exact dates and times the sexual abuse, sexual offenses, and attempted rape occurred.

that court. Before the intermediate appellate court rendered a decision, however, we ordered, on our own motion, the issuance of a writ of certiorari and directed that the parties file supplemental briefs.

### A

In the trial court, the State filed a pretrial motion to invoke § 9–102. Gilbert objected. The hearing on the motion began with a colloquy in open court in which the judge, the prosecutor, and defense counsel participated. It was decided that the judge would question the child witness in chambers in the presence of only the prosecutor, defense counsel, and a stenographer. The defendant was to be excluded.

In chambers, after the name and age of the witness were ascertained, the judge asked the child, "How do you feel about testifying?" The child answered, "Scared." The judge fully explored the child's background. Upon persistent probing, the judge ascertained from the child that she was in the eighth grade of the Woodlawn Middle School, that she liked to study "math" and was good at it, that she had no hobbies—when she was not in school she would "go to sleep." The judge learned that for the past two weeks the child was living with an aunt. Before that she was in a foster home for about eight months. The prosecutor explained that the child had lived with her mother and her stepfather. "Then when the disclosure came [about the abuse] she was placed into foster care and she has been in foster care until about two and a half weeks ago when the authorities allowed her [to stay with an aunt]." In answer to the judge's questions, the child said she had seen her stepfather, but had not talked to him, since he had been arrested. "[H]e was riding around my [aunt's] house. He kept riding around my house." She was scared of her stepfather. He would "[t]ry to hurt me." The prosecutor informed the judge that the child was "seeing a therapist" at the Kennedy Institute. The child said she saw the therapist every Thursday. She told the therapist that she

was scared of her stepfather. The therapist told her "don't worry," but she did not believe that because "my stepfather got ways of doing things." The judge asked the child, "Do you see your mother?" The child responded, "No." The prosecutor explained that the mother "is basically siding with her stepfather."

As a preliminary to inquiring what the stepfather had done to her, the judge elicited from the child that she knew what it was to tell the truth, that if you do not tell the truth you go to jail, and that she planned to tell the truth. The judge then drew from the child the details of the stepfather's sexual abuse of her, which began when she was nine years of age. She told her mother about it, but her mother said she did not believe her and beat her. "She just kept beating me." The prosecutor explained that the stepfather's alleged conduct became known upon a report "by a teacher that [the child] was acting out sexually in drawing pictures in school, [and the teacher] called Protective Services and started an investigation." She was sent to a camp for sex abused children to receive group counseling. She told her aunt and the therapist about what her stepfather had done to her. The stepfather threatened to "cut my head off and send it to my father [if I told]." The prosecutor told the judge that the child did not now see her natural father, although for a short time she had lived with him and his girl friend. Her mother called her while she was in foster care and told her not to testify. Asked what she said to her mother, the child responded, "I didn't say nothing. I just hung up." The session ended on this note:

THE COURT: Do you think you could get on the witness stand and talk?

[THE CHILD]: No.

The judge ruled on the motion:

I am impressed that she is a very repressed young woman, that she finds it very difficult to express herself and I had to ask her to repeat things repeatedly. She is quite obviously frightened and expresses verbally and physically fear of almost everybody connected with the

case. I think she even has apprehensions about her therapist, the Court, the State's Attorney and people who are clearly friendly to her. I think that she will have problems in communicating—serious problems in communicating—because of emotional distress if she is required to undertake the formality of the Courtroom and *be confronted by her stepfather, the Defendant,* of whom she has very obvious, severe fears.

I'm also advised that her mother—she accused her own mother as being on his side, taking his side of the proceedings and, therefore, doesn't receive any support from that direction.

\*     \*     \*     \*     \*     \*

I do feel ... she suffers serious emotional distress and would be unable to reasonably communicate if required to testify from the witness stand and *in front of her father* at that time. So, I will allow the State to present her testimony through video.

(Emphasis added). The judge heard from counsel on the matter. The prosecutor had available two expert witnesses with respect to the inability of the child to testify in the courtroom in the presence of the defendant. The prosecutor proffered the testimony of one of them, the therapist from the Kennedy Institute. The judge did not care to hear from them, preferring to rely, in the circumstances, on her "own appraisal of witnesses from seeing [witnesses] in court all the time." The judge proclaimed:

> [H]aving interviewed her this morning I'm utterly convinced that we are not just going to proceed to hear from her as we usually do from witnesses. They're all apprehensive, but this little girl is obviously in tremendous fear of her [stepfather] in particular but almost anybody and everybody else as well....

The judge's final determination was that she was "going to permit" the § 9–102 procedure.

## B

It so happened that two-way closed circuit television was available in another courtroom. Trial proceeded in that courtroom with the child testifying over that television circuit. Before the child took the stand, the judge fully explained to the jury the circumstances under which the child would testify. At the motion for a new trial, the prosecutor described the procedure that was followed:

> [T]he victim was ... in the same courtroom area as the defendant, but off in another room. Present in that room was the court clerk, myself, and defense counsel....
> [T]he victim had the opportunity to observe the defendant on a monitor which was seated next to her.... [T]here was a monitor, a telephone monitor of sorts in the courtroom where the defendant was able to communicate with his attorney during the course of the entire direct and cross-examination of the victim. There was no way that anyone in the courtroom or myself or the court clerk or anyone else could hear what was being said between the defendant and his attorney, and at all times they were maintaining contact, talking by way of the telephone. In addition, we had in the courtroom and also in chambers a method by which the Judge could hear everything going on in chambers and we could hear everything that was going on in the courtroom. That is the way the microphone setup was. In the courtroom there was a big screen TV where everyone in the courtroom could observe the victim in color at the same time, the jury, the Judge and any spectators as well as the defendant.

## VI

## A

Gilbert's challenges to the judgments entered against him have boiled down to two claims:

(1) the trial court did not find that the victim's inability to reasonably communicate would be caused by Gilbert's presence; and

(2) the decision by the judge to permit the use of the § 9–102 procedure was made without a preliminary confrontation between the victim and Gilbert conducted by the judge.[4]

### (1)

The first claim is devoid of merit. Even a casual scanning of the transcript of the proceedings is enough to lay that claim to rest. The questions put to the child, the child's responses, and the judge's comments show clearly that there was a sharp focus on the effect the presence of the defendant would have on the child when the child was called upon to testify. It is perfectly plain that an essential consideration in the judge's finding concerned the adverse reaction of the child upon an "eyeball-to-eyeball" confrontation with the defendant.

### (2)

■ As to Gilbert's second claim, the judge was without the benefit of *Craig I* when she was faced at the guilt stage of the trial with the question of invoking § 9–102. She did have that opinion before her when she heard Gilbert's motion for a new trial (which she accepted belatedly because of the intervention of *Craig I*) and was troubled by one of its teachings. She observed:

---

**4.** At the time of the argument on the motion for a new trial, Gilbert had obtained different counsel who also represents him on appeal. The State points out that the original brief filed by Gilbert challenged the trial court's failure to explore, as a preliminary matter, the propriety of using alternatives to the closed circuit television procedure. This challenge was based on the mistaken belief that one-way closed circuit television was utilized to obtain the victim's testimony. Gilbert's original brief posited, "In the instant case, the trial judge allowed the use of [one-way] closed circuit television." Gilbert asserted:

> The trial court should have the witness testify from outside the courtroom via two-way television, so that the accused is visible to the witness as well as vice versa.

As we have seen, the procedure used here was two-way closed circuit television. The procedure that Gilbert suggested would be proper was, in fact, used.

There is one thing that disturbs me.... [W]hen I read [*Craig I*] last week, I recall that the idea was expressed that the defendant and the victim should confront one another in this preliminary determination.... [T]he Court seems to indicate that that should be attempted or done.

The prosecutor admitted, "We did not do that as the court knows." The judge responded, "I know the victim never did have to look at the defendant ... [e]xcept on the monitor, but not in the flesh." That "disturb[ed the judge] some." She stated, correctly, "It is too late for me to try it [ (the preliminary confrontation) ] in this case." She hoped that "the appellate court is going to clear it up."

Counsel argued the matter. Neither the judge nor defense counsel nor the prosecutor had the benefit of the Supreme Court's *Maryland v. Craig* at the time. During the course of the argument, the judge reminded counsel:

I held a hearing in which I made a determination that the child's emotional state ... would make it impossible for her to communicate.... [A]fter hearing from her, observing her, talking to her in the presence of counsel in chambers, I came to that conclusion.... [O]f course, I never heard of any confrontation immediately before the trial.

The judge summed up:

We had a preliminary hearing. The one possible problem I have reading what the Court says in [*Craig I*] is that the defendant was not present there. His lawyer was and the witness was and the State and I were. It was on the record, but I am a little disturbed about that....

The judge took the position:

If what we did in this case doesn't meet the [*Craig I*] standard, I think it is something that the higher courts are going to have to address.

The judge denied the motion for a new trial. We have resolved the judge's quandary today.

## B

The judge made a case-specific finding of the necessity for the child to testify out of the physical presence of the defendant. She personally observed, and carefully and fully interviewed, the child on the record. It is perfectly clear from the child's reaction to and responses to the judge's questions that the presence of the defendant at the interview was not desirable because it would be harmful to the child. We hold that, in the circumstances here, the judge did not abuse her discretion in conducting the interview out of the presence of the defendant.

We do not believe that, here, expert testimony was required as an aid for the judge to determine whether to invoke § 9–102. We see no abuse of discretion in the judge's refusal to consider it.

Of course, with two-way closed circuit television readily available, there was no need for the judge to explore other possible means which might be utilized to obtain the child's testimony out of the presence of the defendant. Defense counsel has not suggested that two-way closed circuit television was objectionable and, on the contrary, has indicated that it was proper. *See* note 4, *supra.* And *see* note 2, *supra.*

In short, the judge met all the requirements necessary under the Confrontation Clauses and the statute for the invocation of § 9–102. Her decision to invoke it was not erroneous. We affirm the judgments of the Circuit Court for Baltimore City.

AS TO CRAIG v. STATE, NO. 110, SEPTEMBER TERM, 1988: JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED;

CASE REMANDED TO THAT COURT WITH DIRECTION TO REVERSE THE JUDGMENTS OF THE CIRCUIT COURT FOR HOWARD COUNTY AND REMAND TO THAT COURT FOR A NEW TRIAL;

**442**

■■■■■

COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY HOWARD COUNTY.

AS TO GILBERT v. STATE, NO. 63, SEPTEMBER TERM, 1990: JUDGMENTS OF THE CIRCUIT COURT FOR BALTIMORE CITY AFFIRMED WITH COSTS.