**Idalio SANTOS, Petitioner,**

v.

**John BROWN, Warden, Adult Correctional Institution.**

Civ. A. No. 80–0286.

United States District Court,
D. Rhode Island.

Oct. 11, 1984.

---

John M. Roney, Roney & Labinger, Barbara Hurst, Asst. Public Defender, Providence, R.I., for Santos.

Dennis J. Roberts, II, Atty. Gen., Sharon O'Keefe, Dept. of Atty. Gen., Appellate Div., Providence, R.I., for Brown.

## OPINION

FRANCIS J. BOYLE, Chief Judge.

Petitioner was convicted in the Rhode Island Superior Court of committing an abominable and detestable crime against nature (sodomy) and transporting for immoral purposes. During the testimony of the complaining witness, the trial judge excluded spectators from the courtroom over the objection of the defense attorney and without an evidentiary hearing. On direct appeal to the Supreme Court of Rhode Island, Petitioner claimed the trial judge violated his Sixth Amendment right to a public trial by failing to hold an evidentiary hearing prior to clearing the courtroom of all spectators. He now presents his claim on a petition for habeas corpus relief. His petition is based on the United States Supreme Court's opinion in *Richmond Newspapers, Inc. v. Virginia,* 448 U.S. 555, 100 S.Ct. 2814, 65 L.Ed.2d 973 (1980) and other cases which were decided after his trial. Petitioner has exhausted all his state remedies. At issue is the extent of Petitioner's right to a public trial as required by the Sixth Amendment. Also at issue is the retroactive application of feder-

al constitutional law, as determined in United States Supreme Court opinions filed after trial.

## 1. BACKGROUND

Idalio Santos ("Petitioner") was tried in October 1978 in the Rhode Island Superior Court on four counts: rape, kidnapping, sodomy and transporting for immoral purposes.[1] The prosecution called as its first witness the complainant, a woman who at the time of trial was twenty-two years old. The prosecution moved to close the courtroom to the public. The following colloquy took place in which Mr. Landry, an Assistant Attorney General and Mr. Casparian, counsel for the Defendant addressed the Court:

> MR. LANDRY: Your Honor, before this witness testified (sic) the State, at this point, makes a motion that the courtroom be cleared relative to any spectators other than of course the jury and the court personnel, because of the nature of the testimony and I think it's in the best interest of the State and everybody at this point that the courtroom be cleared.

> MR. CASPARIAN: I must strenuously object. The complaining witness is not a child of tender years. Especially to grant this motion without the court making inquiry with the witness, Your Honor please, I think would be improper. The defendant is entitled to a public trial. He is entitled to have the doors of the court opened. I don't think this is a situation where a courtroom should be closed, if the court please.

> THE COURT: Because of the outline in the opening statement of counsel, the court will exclude all people that are in the courtroom who witness this trial, and will open the doors as soon as her testimony is concluded. And, this does not deprive the defendant of an open and public trial. And, based upon the facts

that the type of testimony that will be given, based upon the opening as outlined by counsel, I feel it's in the best interest of all parties concerned. The courtroom doors may be shut, at this time.

The trial court's order excluding spectators from the courtroom was based solely on the nature of the testimony expected from the complainant, according to the State attorney's representations already made in open court. Among the spectators who left the courtroom when the court issued its closure order were Petitioner's mother and sister, and members of the press. The courtroom was reopened after the completion of the complainant's testimony.

On October 18, 1978, the jury acquitted Petitioner of rape and of kidnapping, and convicted him of sodomy and of transporting for indecent purposes. The Defendant contended that the complaining witness had consented. The court instructed the jury that consent was not relevant on the two counts of which he was convicted. He was sentenced to ten years (seven suspended) and three years (two suspended) for the respective convictions. Petitioner's appeal to the Rhode Island Supreme Court was denied. *State v. Santos*, 413 A.2d 58 (R.I. 1980).

Having exhausted his state remedies, Petitioner filed the present petition for a writ of habeas corpus. He claims, first, that the trial court violated his Sixth Amendment right to a public trial by closing the courtroom during the complainant's testimony, without an evidentiary hearing. Second, he claims that the statutes under which he was convicted are unconstitutionally vague, deny him due process and equal protection and violate his right to privacy.[2] Petitioner has moved for partial summary judgment on his Sixth Amendment claim.

The Rhode Island Supreme Court relied on *United States ex rel. Smallwood v. La Valle*, 377 F.Supp. 1148 (E.D.N.Y.1974) in

---

**1.** The events which led to criminal charges against Petitioner are described by the Rhode Island Supreme Court in *State v. Santos,* 413 A.2d 58, 61–62 (R.I.1980).

**2.** Because of the Court's determination of Petitioner's Sixth Amendment argument, it is not necessary to consider Petitioner's other contentions.

holding that the right to a public trial, although fundamental, is not a "limitless imperative" of a criminal defendant. *Id.* at 1151. It stated in part that the public may be excluded from the courtroom—"if, in light of the nature of the crime, the expected testimony, or the emotional state of the witness" the court determines "the testimony would likely be severely hampered or distorted if the witness were required to testify in public." *State v. Santos*, 413 A.2d 58, 63 (R.I.1980).

## 2. OPEN TRIAL

■ Generally, the public trial guarantee of the Sixth Amendment is a well-established safeguard against the possible abuse of judicial power or use of the courts as instruments of persecution. *In re Oliver*, 333 U.S. 257, 270, 68 S.Ct. 499, 506, 92 L.Ed. 682 (1948). Although the right to a public trial is fundamental, it is not absolute and must be balanced against other interests which might justify excluding the public. *United States v. Eisner*, 533 F.2d 987, 993 (6th Cir.1976), *cert. denied*, 429 U.S. 919, 97 S.Ct. 314, 50 L.Ed.2d 286 (1976). The state of the law at the time of trial regarding the balancing of interests was unclear.

■ Shortly after the *Santos* opinion was filed by the Rhode Island Supreme Court, the United States Supreme Court enumerated strict requirements for closure, finding that the press and public have a First Amendment right to attend a criminal trial. *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 573, 100 S.Ct. 2814, 2825, 65 L.Ed.2d 973 (1980). The Court held that a "presumption of openness inheres in the very nature of a trial under our system of justice," *id.*, and that only an overriding interest in closure could supercede this right of access. *Id.* at 581, 100 S.Ct. at 2829. The Court further explicated the weighty criteria required to preclude the public's independent right of access to trial proceedings in *Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 102 S.Ct. 2613, 73 L.Ed.2d 248 (1982) and in *Press-Enterprise Co. v. Superior Court of Cali-*

*fornia, Riverside County*, —— U.S. ——, 104 S.Ct. 819, 78 L.Ed.2d 629 (1984). Most recently, the Court addressed a defendant's Sixth Amendment right to a public trial, stating that the closure of a suppression hearing over the objections of the accused must meet the tests set out in *Press-Enterprise* and its progeny. *Waller v. Georgia*, —— U.S. ——, 104 S.Ct. 2210, 2216, 81 L.Ed.2d 31 (1984). The constitutional right to a public trial is for the protection of the defendant, in order that the public may see that he is fairly dealt with and not unjustly condemned, and in order that the presence of interested spectators may keep his triers keenly alive to a sense of their responsibility and to the importance of their functions. *Id.* 104 S.Ct. at 2215. Any closure of the courtroom over the objections of the accused must therefore meet the following tests: the party seeking closure must show likely harm to an overriding interest, closure must be no broader than necessary to protect that interest, the trial court must consider reasonable alternatives to closure, and it must make adequate findings to support the closure. *Id.; Cf. Press-Enterprise Co. v. Superior Court of California, Riverside County*, —— U.S. ——, 104 S.Ct. 819, 824, 78 L.Ed.2d 629 (1984).

The Supreme Court has not as yet provided standards for deciding whether there is an overriding interest in closure of a trial or of pretrial hearings. Two circuits have adopted tests proposed by Justice Blackmun's dissent in *Gannett v. De. Pasquale*, 443 U.S. 368, 99 S.Ct. 2898, 61 L.Ed.2d 608 (1979). The test prescribes access to the courtroom unless closure is vitally necessary for a fair trial. This is demonstrated by a substantial probability, first that irreparable damage to his fair-trial right will result from conducting the proceeding in public, second, that alternatives to closure will not protect his right to a fair trial, and third, that closure will be effective in protecting against the perceived harm. *Id.* at 441–42, 99 S.Ct. at 2936–37. The Ninth Circuit applied this strict Blackmun test in reversing the trial court's decision to partially close the voir dire and hearing on two

evidentiary matters. *United States v. Brooklier*, 685 F.2d 1162, 1167 (9th Cir. 1982). The Fourth Circuit, in applying the Blackmun test, found that closure of the voir dire met the Blackmun standard where reporters sought access in a much-publicized criminal trial. *In re Greensboro News Co.*, 727 F.2d 1320, 1324–25 (4th Cir.), *petition for cert. filed*, 52 U.S.L.W. 3562 (U.S. June 4, 1984) (No. 83–1995).

■ Although the applicable test for an evidentiary hearing is not at issue here, the requirement of an evidentiary hearing is. There is no need to consider on what possible basis the trial justice might have confined the giving of the complainant's testimony to a courtroom cleared of spectators and the press. It is evident from the trial court transcript that no evidentiary hearing of any type took place. No required findings were made, or could have been made in accordance with the recent *Richmond* and *Waller* decisions. The Petitioner's Sixth Amendment constitutional right to a public trial as it has lately been developed was violated.

Neither the trial court nor the State Supreme Court could have been expected to accurately foresee this change in the law. Because exhaustion of Petitioner's state remedies is complete, it is necessary to discuss whether this later developed case law is to be given retroactive application.

## 3. RETROACTIVE APPLICATION OF LAW

■ When the sole question in a habeas petition is the retroactivity of a federal constitutional decision, federal courts may decide the issue without requiring the petitioner to return to the state courts for reconsideration in light of the new constitutional principle. *Roberts v. Russell*, 392 U.S. 293, 294, 88 S.Ct. 1921, 1922, 20 L.Ed.2d 1100 (1968) (per curiam). If the facts are not in dispute and their application to the constitutional principal are clear, then the concerns of comity are met. *Vargas v. Brown*, 512 F.Supp. 271, 273–74

(1981); *Subilosky v. Massachusetts*, 412 F.2d 691, 693 (1st Cir.1969).

In a habeas proceeding, the First Circuit has tacitly applied *Jackson v. Denno*, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964) retroactively, requiring a trial judge to make a clear-cut determination of the voluntariness of a confession. *Johnson v. Hall*, 605 F.2d 577, 580 (1st Cir.1979). In the same case, however, the court declined to decide the retroactive effect of *Lego v. Twomey*, 404 U.S. 477, 92 S.Ct. 619, 30 L.Ed.2d 618 (1972), regarding the burden of proof in a hearing to determine the voluntariness of a confession. The court determined that the confession would have been voluntary even under the *Lego* standard. *Johnson v. Hall*, 605 F.2d at 580.

■ Generally, law may be applied retroactively when the major purpose of a new constitutional doctrine is to overcome the impairment of the truth-finding function and where there is a serious question regarding the accuracy of a guilty verdict. *Williams v. United States*, 401 U.S. 646, 653, 91 S.Ct. 1148, 1152, 28 L.Ed.2d 388 (1971); *Ivan v. City of New York*, 407 U.S. 203, 204, 92 S.Ct. 1951, 1952, 32 L.Ed.2d 659 (1972). This question of degree depends on how the new rule enhances the integrity of the fact-finding process. *Johnson v. New Jersey*, 384 U.S. 719, 729, 86 S.Ct. 1772, 1778, 16 L.Ed.2d 882 (1966). It is a question of probabilities and requires inquiry into other safeguards available to protect the integrity of the trial. *Id.* In *Ivan* the court gave retroactive application to *In re Winship*, requiring the government to bear the burden of the reasonable doubt standard. *Ivan v. City of New York*, 407 U.S. 203, 204, 92 S.Ct. 1951, 1952, 32 L.Ed.2d 659 (1972). The court has also given retroactive effect to *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), concerning the right of an indigent to the advice of counsel at trial, and *Jackson v. Denno*, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964), involving the right of the accused to effective exclu-

sion of an involuntary confession from trial. *Linkletter v. Walker,* 381 U.S. 618, 639, 85 S.Ct. 1731, 1743, 14 L.Ed.2d 601 (1965); *Tehan v. Shott,* 382 U.S. 406, 416, 86 S.Ct. 459, 465, 15 L.Ed.2d 453 (1966). In both cases, the Court found retroactive application proper because the new constitutional principles affected the very integrity of the fact finding process. *Linkletter v. Walker,* 381 U.S. at 639, 85 S.Ct. at 1743.

Conversely, the Court declined to apply retroactively the principles of *Escobedo v. Illinois,* 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964) or *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). *Johnson v. New Jersey,* 384 U.S. 719, 733, 86 S.Ct. 1772, 1780, 16 L.Ed.2d 882 (1966). The Court reasoned that although *Escobedo* and *Miranda* guard against the possibility of unreliable statements, during in-custody interrogation, they do not directly safeguard against unreliable statements at trial. *Id.* at 730, 86 S.Ct. at 1779. In addition, the court was concerned that retroactive application of *Escobedo* and *Miranda* would seriously disrupt the administration of justice by opening floodgates on petitions for retrial. *Id.* at 731, 86 S.Ct. at 1779.

These administrative concerns do not affect the present case. In fact, the aims and interests of the accused's rights to a public trial, in ensuring that the public sees that he is fairly dealt with and not unjustly condemned, and in encouraging witnesses to come forward, and in discouraging perjury, are mainstays of integrity in the fact finding process. For these reasons and because of the fundamental nature of the Sixth Amendment right to a public trial, the Court holds the *Richmond* and *Waller* principles requiring an evidentiary hearing, of sufficient weight to merit their retroactive application.

The petition for habeas corpus relief is granted and Petitioner is discharged from detention unless he is afforded a new trial commencing within 120 days of the date of this opinion.