612 A.2d 1288
**Ronald Gene WATTERS**

v.

**STATE of Maryland.**

**No. 134, Sept. Term, 1990.**

Court of Appeals of Maryland.

Oct. 2, 1992.

Arthur A. DeLano, Jr., Asst. Public Defender, Stephen E. Harris, Public Defender, on brief, Baltimore, for petitioner.

Sarah E. Page, Asst. Atty. Gen., J. Joseph Curran, Jr., Atty. Gen., on brief, Baltimore, for respondent.

Argued before MURPHY, C.J., and ELDRIDGE, RODOWSKY, McAULIFFE, CHASANOW and CHARLES E. ORTH, Jr., Judge of the Court of Appeals (retired, Specially Assigned), JJ.

Reargued before MURPHY, C.J., and ELDRIDGE, RODOWSKY, McAULIFFE, CHASANOW, ROSALYN B. BELL and CHARLES E. ORTH, Jr., Judge of the Court of Appeals (retired, Specially Assigned), JJ.

McAULIFFE, Judge.

Ronald Gene Watters was convicted in the Circuit Court for Wicomico County of murder in the first degree and related offenses, and was sentenced to life without parole. The Court of Special Appeals affirmed. *Watters v. State*, 84 Md.App. 230, 578 A.2d 810 (1990). We granted Watters' petition for certiorari to consider whether the trial court improperly denied the defendant's motion for a mistrial following exclusion of the public from the voir dire and selection of jurors.

The murder for which Watters was convicted was highly publicized in the Salisbury area. The victim, Lisa Renee Taylor, had disappeared on her way home from her parents' house. Her body was found months later, badly decomposed, in a wooded lot near Salisbury State University. Because of extensive media coverage given the case at the

time the body was discovered and just before trial, voir dire of prospective jurors was somewhat protracted.

Without the knowledge or consent of the trial judge or the parties, a deputy sheriff excluded the public, including members of defendant's family and possibly representatives of the press, from the courtroom during voir dire and jury selection—a process that consumed the entire first morning of trial. Acting on his own, the deputy allowed only prospective jurors, witnesses, and courtroom personnel to enter the courtroom.[1]

After jury selection, and following a luncheon recess during which the defendant learned of the courtroom closure, his counsel moved for a mistrial, claiming that the defendant had been deprived of his Sixth Amendment right to a public trial. He alleged:

> [I]t was brought to my attention during lunch recess that the bailiffs, members of the Wicomico County Sheriff's Office, excluded members of the public from being present in the courtroom this morning during jury selection. Furthermore, it was brought to my attention they excluded members of the news media from being here.

At a hearing on the motion, the deputy who had closed the courtroom testified that he had ordered the exclusion "[b]ecause of the nature of the number of people involved in the case and the courtroom would not handle all the persons who wanted to get into the courtroom." The deputy admitted, however, that there were "some seats" available, but he could not estimate how many.[2] Counsel for the defendant proffered his recollection as follows:

---

**1.** It is not clear from the record whether this deputy sheriff ordinarily dealt with matters of courtroom security, or was filling in for Lieutenant Tom Brown of the sheriff's office, who, this deputy explained, was "in charge of courtroom security." Lt. Brown was not available because he had been subpoenaed for jury duty, and was in fact among the venirepersons brought to this courtroom.

**2.** Defense counsel asked the deputy "were there three or four rows available of seats?" Unfortunately, the trial judge sustained the prosecutor's objection to this question, notwithstanding that the question

My recollection of the—and I would put testimony from the witness stand in the record from the sheriffs and the bailiffs if necessary—but there was plenty of room on the left-hand side of the courtroom for spectators, members of the news media, to be present. The courtroom was not full, although certain portions of it were full where certain jury panels were seated together.

The prosecutor did not challenge defense counsel's recollection. He stated simply, "I don't know who gave the instructions to close the courtroom."

Defense counsel then produced the testimony of Lillian Trotter, the defendant's mother. Ms. Trotter stated that she, her aunt, and her two sisters arrived at the courthouse at 9:30 a.m., and sought admission to the courtroom. She and her party were denied admission even though she identified herself as the defendant's mother. She was not admitted until 1:30 p.m., following the luncheon recess.

The trial judge denied the motion for mistrial, stating "it was done as a matter of court security because of the crowded conditions of the courtroom, and it is not denying him his right to a public trial."

The defendant argues that the closure did not satisfy the Supreme Court's requirement that any closure must be narrowly tailored and serve an overriding governmental interest. *Waller v. Georgia,* 467 U.S. 39, 104 S.Ct. 2210, 81 L.Ed.2d 31 (1984); *Press–Enterprise Co. v. Superior Court of Cal.,* 464 U.S. 501, 104 S.Ct. 819, 78 L.Ed.2d 629 (1984). He contends there was no overriding interest because the deputy admitted there were still seats available, and that it was not narrowly tailored because access could have been limited rather than precluded. The defendant also notes that closure continued for the entire morning of trial, and encompassed the entire voir dire and jury selection process. Moreover, the defendant says, he is entitled to relief for a

represented a legitimate attempt to narrow an earlier inquiry in which the witness was asked to estimate the number of seats available—a question the witness could not answer.

violation of his right to a public trial without demonstrating specific prejudice. *See Waller v. Georgia, supra,* 467 U.S. at 49, 104 S.Ct. at 2217.

The State argues that the standard proposed by the defendant applies only when a court is determining whether to grant a party's motion to close a trial. The State further contends that the appropriate test for this case, where the courtroom was closed by a deputy sheriff without the judge's knowledge, is merely whether the trial court abused its discretion in refusing to grant a mistrial. The State contends the denial of the motion was within the trial judge's discretion because a mistrial need be granted only when there is a manifest necessity due to extreme circumstances. The State urges us, as a reviewing court, to defer to the trial court's determination that there was no manifest necessity in this case. *See Hunt v. State,* 321 Md. 387, 422, 583 A.2d 218 (1990), *cert. denied,* — U.S. —, 112 S.Ct. 117, 116 L.Ed.2d 86 (1991); *Johnson v. State,* 303 Md. 487, 516, 495 A.2d 1 (1985), *cert. denied,* 474 U.S. 1093, 106 S.Ct. 868, 88 L.Ed.2d 907 (1986). The State contends that even if the closure here was improper, the error was *de minimus,* and not of constitutional magnitude.

## I.

■ The Supreme Court has ardently protected a criminal defendant's right to a public trial[3] and has addressed the circumstances which may justify infringement of this right and the standard by which these factors must be balanced. *See Waller v. Georgia, supra,* and *Press–Enter-*

---

**3.** That voir dire proceedings are part of a trial for public trial purposes was established by the Supreme Court in *Press–Enterprise Co. v. Superior Court of Cal.,* 464 U.S. 501, 509–10, 104 S.Ct. 819, 823–24, 78 L.Ed.2d 629 (1984). Maryland cases have also demonstrated this Court's attention to a defendant's trial rights at the voir dire stage. *See, e.g., Bedford v. State,* 317 Md. 659, 672, 566 A.2d 111 (1989) ("At the very least, the defendant must be allowed to be present at trial. This right includes the voir dire."); *Noble v. State,* 293 Md. 549, 446 A.2d 844 (1982) (defendant must waive right to be present at each stage of trial, including voir dire).

*prise Co. v. Superior Court of Cal., supra.* The Court in *Press–Enterprise* held that under the First Amendment, a trial could be closed only to protect an overriding governmental interest through a narrowly tailored order. 464 U.S. at 510, 104 S.Ct. at 824. The *Waller* Court noted that the express rights of a defendant under the Sixth Amendment were at least as extensive as the implied rights of the public and press under the First Amendment, and thus applied the same test to a Sixth Amendment challenge to closure. 467 U.S. at 46, 104 S.Ct. at 2215. Under present law, therefore, whether objection to closure is made by the defendant or the press, the public may only be constitutionally excluded from a trial, including voir dire, pursuant to a narrowly tailored order necessary to protect an overriding state interest.

█ The circumstances at this trial did not present a compelling need for excluding members of the defendant's family as well as the press and the public. The record, although lacking in desirable particulars, establishes that there were seats available during the voir dire and jury selection.

█ Moreover, even if the State could show that under the circumstances then prevailing the government had a legitimate interest in preventing overcrowding, it could not show that the exclusion of all persons was a narrowly tailored means of protecting that interest. There was no effort to ensure that petitioner's family could be present while the jury was selected, nor was there apparently any effort to admit representatives of the press. There was not even an attempt to fill the remaining seats impartially. Rather, after the venirepersons and witnesses had taken their places, the empty seats were left vacant, notwithstanding the early arrival of the defendant's family members and their request for admission. The closure of the courtroom under these circumstances violated the defendant's Sixth Amendment right to a public trial.

## II.

The defendant, relying on *Waller v. Georgia, supra,* argues that he is entitled to a new trial on the basis of this violation because he is not required to prove specific prejudice in order to obtain relief for a violation of the public-trial guarantee. The State answers that it would be absurd to require a new trial for every accidental, technical violation of a defendant's Sixth Amendment right to a public trial, and that where the violation is *de minimus* a new trial should not be required. Put another way, the State says that not every closure is of constitutional dimension.

Each argument has merit. Our task, therefore, is to determine whether the violation in this case may properly be classified as *de minimus* and undeserving of constitutional protection, or as a significant violation of the Sixth Amendment carrying with it a presumption of prejudice to the defendant and therefore requiring the granting of appropriate relief.

In *Press–Enterprise,* the Supreme Court recognized the historically public character of the jury selection process, noting that it "enhances both the basic fairness of the criminal trial and the appearance of fairness so essential to public confidence in the system." 464 U.S. at 508, 104 S.Ct. at 823 (citing *Richmond Newspapers, Inc. v. Virginia,* 448 U.S. 555, 569–71, 100 S.Ct. 2814, 2823–24, 65 L.Ed.2d 973 (1980)). Although *Press–Enterprise* was decided on the basis of a First Amendment challenge to a trial closure, and thus primarily addressed the harm to the press and public, the harm to a defendant resulting from a closed trial was recognized in *Waller:*

> The central aim of a criminal proceeding must be to try the accused fairly, and "[o]ur cases have uniformly recognized the public-trial guarantee as one created for the benefit of the defendant."

*Waller v. Georgia, supra,* 467 U.S. at 46, 104 S.Ct. at 2215 (quoting *Gannett Co. v. DePasquale,* 443 U.S. 368, 380, 99 S.Ct. 2898, 2905, 61 L.Ed.2d 608 (1979)). With respect to

the more concrete benefits to the defendant of a public trial, the *Waller* Court observed that "[i]n addition to ensuring that judge and prosecutor carry out their duties responsibly, a public trial encourages witnesses to come forward and discourages perjury." 467 U.S. at 46, 104 S.Ct. at 2215.

The Supreme Court recognized that although these "benefits of a public trial are frequently intangible, difficult to prove, or a matter of chance, the Framers plainly thought them nonetheless real." *Id.* at 49, n. 9, 104 S.Ct. at 2217, n. 9. Consequently, the *Waller* Court agreed that "the defendant should not be required to prove specific prejudice in order to obtain relief for a violation of the public-trial guarantee." [4] *Id.* at 49, 104 S.Ct. at 2217. The Court left little room for doubt concerning the mandatory nature of the presumption of prejudice to be applied when a violation of the Sixth Amendment right to a public trial has been shown:

> The general view appears to be that of the Court of Appeals for the Third Circuit. It noted in an en banc opinion that a requirement that prejudice be shown "would in most cases deprive [the defendant] of the [public-trial] guarantee, for it would be difficult to envisage a case in which he would have evidence available of specific injury." *United States ex rel. Bennett v. Rundle*, 419 F.2d 599, 608 (1969). While the benefits of a public trial are frequently intangible, difficult to prove, or a matter of chance, the Framers plainly thought them nonetheless real. See also *State v. Shepard*, 182 Conn. 412, 418, 438 A.2d 125, 128 (1980) ("Because demonstration of prejudice in this kind of case is a practical impossibility, prejudice must necessarily be implied"); *People v.*

---

**4.** The *Waller* Court did not conclude that an improperly closed suppression hearing entitled the defendant to a new trial; rather, the Supreme Court stated that "the remedy should be appropriate to the violation," 467 U.S. at 50, 104 S.Ct. at 2217, and ordered a new, public suppression hearing, with a new trial to follow only if the public hearing resulted in different suppression rulings. Clearly, no such limited relief is available where the public-trial guarantee was violated during jury selection and trial has been concluded.

*Jones,* 47 N.Y.2d 409, 416, [418 N.Y.S.2d 359, 364] 391 N.E.2d 1335, 1340 (1979) ("The harmless error rule is no way to gauge the great, though intangible, societal loss that flows" from closing courthouse doors).

*Waller v. Georgia, supra,* 467 U.S. at 49, n. 9, 104 S.Ct. at 2217, n. 9 (brackets in original). The Third Circuit had elaborated:

Indeed, the barring of spectators would make it impossible for the unknown individual to stray into the courtroom and reveal his information bearing on the case. To require proof of this by the defendant would be ironically to enforce against him the necessity to prove what the disregard of his constitutional right has made it impossible for him to learn.

*United States ex rel. Bennett v. Rundle,* 419 F.2d 599, 608 (3d Cir.1969).

Although the Supreme Court has recently held that a trial error even as potentially critical as the admission of an involuntary confession is subject to harmless error analysis, it has not retreated from the view that the deprivation of the constitutional right to a public trial cannot be harmless error. *Arizona v. Fulminante,* —— U.S. ——, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991). The Court noted that denial of a public trial is a "structural defect affecting the framework within which the trial proceeds, rather than simply an error in the trial process itself." *Id.,* —— U.S. at ——, 111 S.Ct. at 1265.

 Along with the general detriments associated with a closed trial, notably the inability of the public to judge for itself and to reinforce by its presence the fairness of the process, the present case demonstrates other kinds of harms: the inability of the defendant's family to contribute their knowledge or insight to the jury selection and the inability of the venirepersons to see the interested individuals. The Third Circuit has suggested the importance of the former by noting that anyone should be free to view the proceedings and "reveal his information bearing on the

case." *United States ex rel. Bennett v. Rundle*, 419 F.2d 599, 608 (3d Cir.1969).

The scope of the closure in this case was substantial. The courtroom was open only to court personnel, the venirepersons, and witnesses. All other members of the public, including members of the defendant's family and the press, were barred. The closure extended over a significant period of time—an entire morning of trial during which the voir dire and selection and swearing of the jury were accomplished. Although we agree with the State that not every technical violation of the Sixth Amendment right of open trial requires a new proceeding or trial, we would be hard pressed to declare a violation of this magnitude *de minimus*, or otherwise not of constitutional significance. We conclude that this violation of the defendant's Sixth Amendment right carries with it the presumption of specific prejudice mandated by *Waller*, and thus requires the granting of appropriate relief. Under the particular facts of this case, that relief is necessarily the granting of a new trial.

### III.

Finally, the State argues that even if there was a violation of constitutional magnitude which, if committed by a judicial officer would ordinarily require the granting of a new trial, that principle is not applicable to this case. The State offers two reasons in support of this argument: the error was committed by a deputy sheriff acting without knowledge of the court; and, because the error was brought to the attention of the court only after it had occurred, by means of a motion for mistrial, the scope of appellate review must be very generous in favor of upholding the decision of the trial judge made in the exercise of the wide discretion granted him in such matters. We find the argument unpersuasive.

That the defendant was denied a constitutional right by a State official other than the judge is of little

moment.[5] In *Parker v. Gladden,* 385 U.S. 363, 87 S.Ct. 468, 17 L.Ed.2d 420 (1966), the Supreme Court ordered a new trial because of prejudicial statements made by a bailiff to jurors during deliberation, holding that "the statements of the bailiff to the jurors are controlled by the command of the Sixth Amendment." *Id.* at 364, 87 S.Ct. at 470. Nor does the fact that the violation was brought to the attention of the court by way of a motion for a mistrial change the result. It is true that ordinarily the decision of whether to grant a motion for a mistrial rests within the discretion of the trial judge. *Kosmas v. State,* 316 Md. 587, 594, 560 A.2d 1137 (1989); *Wilhelm v. State,* 272 Md. 404, 429, 326 A.2d 707 (1974). That discretion is often quite broad because a trial judge is ordinarily in a uniquely superior position to gauge the potential for prejudice in a particular case, and therefore to determine whether a mistrial is appropriate or required. Occasionally, the prejudice will be manifest and the mistrial must be granted. *Kosmas, supra,* 316 Md. at 594–98, 560 A.2d 1137. Here, as we have noted, the constitutional violation was significant and prejudice to the defendant was presumed. Under these circumstances, there was but one decision that could be made—the defendant was entitled to the mistrial he sought.

JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED; CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO REVERSE THE JUDGMENT

---

**5.** We observe, for the benefit of trial judges in future cases, that the trial judge controls the courtroom. Whether and to what extent a courtroom must be closed is a decision exclusively within the domain of the trial judge. He or she may and should consult with the authorities providing security, but the final decision must be made by the trial judge after carefully weighing and balancing security or other interests against the right of a defendant to a fair trial and the right of the public and the defendant to an open trial. Closure, or unusual security measures that threaten the defendant's right to a fair trial, should be permitted only when supported by a compelling interest and backed up by a record clearly disclosing the factual basis and reasons for the action taken. *See generally Baltimore Sun v. Colbert,* 323 Md. 290, 593 A.2d 224 (1991); *Hunt v. State,* 321 Md. 387, 407–14, 583 A.2d 218 (1990), *cert. denied,* —— U.S. ——, 112 S.Ct. 117, 116 L.Ed.2d 86 (1991).

OF THE CIRCUIT COURT FOR WICOMICO COUNTY AND TO REMAND THE CASE TO THAT COURT FOR A NEW TRIAL; COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY WICOMICO COUNTY.