STATE

v.

**Thayer FAYERWEATHER.**

No. 87–471 C.A.

Supreme Court of Rhode Island.

April 27, 1988.

As Corrected June 2, 1988.

James E. O'Neil, Atty. Gen., Thomas Dickinson, Caroline Cole Cornwell, Asst. Attys. Gen., for plaintiff.

Barbara Hurst, Asst. Public Defender, for defendant.

OPINION

KELLEHER, Justice.

A Superior Court jury has returned a guilty verdict against the defendant, Thayer Fayerweather, who was charged with the commission of a second-degree child-molestation assault upon a four-year-old girl. In his appeal[1] the defendant challenges several evidentiary rulings made by the trial justice, and he lays particular stress on the trial justice's grant of the prosecutor's motion "to close the courtroom" while "Mary"[2] testified. Mary was four years old at the time of this incident. When the case came to trial, she was six.

In October of 1985 defendant was working for Mary's father in South Providence, renovating a vacant house. The four-year-old was playing around the premises. At trial, she testified that when her father left the premises, defendant pulled down her pants and underwear and "licked my private with his tongue." Mary told her mother about the incident about a week later, after watching a television program on sexual abuse.

The single issue meriting any consideration is the closure order fashioned by the trial justice. After the trial justice had conducted a hearing about the six-year-old's ability to observe, recollect, and communicate and to appreciate the necessity of telling the truth, the prosecutor made a motion "to close the courtroom." Upon hearing this motion, the trial justice announced that he would spend the evening studying the present state of the law concerning courtroom closures. On the next day, after receiving defendant's not-guilty plea and impaneling the jury, the trial justice stated that justice would be served by imposing a limited closure. After announcing that the press and defendant's relatives would be permitted to be present at trial,

---

1. This case originally came before the court on a show-cause calendar, but because of the significance of the issue presented, it was felt that a published opinion would be more appropriate.

2. Mary is a pseudonym.

the trial justice asked defendant's trial counsel if he had anyone in mind who he thought should be allowed to remain at the hearing. The response was "No I don't, your Honor."

In *Santos v. Brown*, 596 F.Supp. 214, 217–18 (D.R.I.1984), Chief Judge Francis J. Boyle of the United States District Court of Rhode Island, after alluding to several recent Supreme Court pronouncements on courtroom closures, observed that the party seeking the closure order must show likely harm to an overriding interest. The closure should not be broader than necessary to protect that interest, and the trial court is required to consider reasonable alternatives to closure and make adequate findings to support the closure. It was also emphasized that an evidentiary hearing be conducted on the state's request.

■ In this case, when the trial justice was first confronted with the closure motion, he expressed the belief that the six-year-old had an "enormous privacy interest" and an interest in not incurring psychic injury by her appearance as a witness.

The record clearly indicates that the state was advancing a compelling interest that would be likely to be harmed in the absence of some restriction of those who would be present when the six-year-old testified about what occurred when she and defendant were alone at the renovation project. The trial justice was well aware of defendant's constitutional right to a public trial when he refused to approve the motion for full closure offered by the state. Instead, he came up with an alternative plan in which the press and defendant's family would be present when the six-year-old described her encounter with defendant. It is equally obvious that the trial justice also considered the youngster's age, psychological immaturity, and her lack of understanding of the nature of the crime. In his quest for alternatives, the trial justice asked defense counsel if he wished to suggest names of additional members of the public who counsel believed should be present when the young victim testified.

■ There is no question here that both the press and defendant's family were present and could observe possible unfair treatment of the accused by the trial justice. It may be that the trial justice failed to touch all the bases laid down in *Santos*. However, we do not subscribe to the notion or the belief that such an omission requires

an automatic reversal. The United States Supreme Court announced the doctrine of harmless error in *Chapman v. California*, 386 U.S. 18, 22, 87 S.Ct. 824, 827, 17 L.Ed.2d 705, 709–10 (1967), and clarified the doctrine in *United States v. Hasting*, 461 U.S. 499, 509, 103 S.Ct. 1974, 1980, 76 L.Ed.2d 96, 106 (1983):

"[I]t is the duty of a reviewing court to consider the trial record as a whole and to ignore errors that are harmless, including most constitutional violations * * *."

Here there was no total exclusion of the public. If they were of a mind, the press and the defendant's family could have been present when the child testified. We have no idea of the aggregate number of people that were embraced in those two categories. There is nothing to suggest that a significant number of individuals attended the trial or wished to attend or were unable to gain admittance to the courtroom when the six-year-old was about to testify. What is significant, we believe, is that the trial justice was cognizant of his obligation to keep the trial public while mitigating, if possible, the shame and embarrassment that awaited the six-year-old once she appeared as a witness. His solution, in our opinion, protected the defendant's right to a public trial and eased to some degree what must have been a difficult experience for a child of tender years.

Consequently, even assuming that the trial justice's actions in promulgating an order that left the print media and the defendant's family in the courtroom might have been constitutionally deficient in some aspect, after considering the entire record, we are of the opinion that the defendant suffered no prejudice and the trial justice's error, if any, was harmless beyond a reasonable doubt. The defendant's appeal is denied and dismissed. The judgment of conviction is affirmed.

### ORDER

The defendant's counsel seeks to correct an erroneous statement which is to be found in the opinion that was filed in this case on April 27, 1988. The statement referred to the presence of both the press and defendant's family at trial. This statement was indeed erroneous and based in part upon a statement in the state's prebriefing statement and on the assumption that defendant's family, if not the press, would be present at Fayerweather's trial.

The statement in question adds nothing to the opinion and has been deleted therefrom.

The motion to supplement the record is denied pro forma.