738 A.2d 871

**Robert Ciana CARTER**

v.

**STATE of Maryland.**

**No. 73, Sept. Term, 1998.**

Court of Appeals of Maryland.

Oct. 8, 1999.

Bradford C. Peabody, Asst. Public Defender (Stephen E. Harris, Public Defender, on brief) Baltimore, for petitioner.

Gary E. Bair, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., on brief) Baltimore, for respondent.

Argued before BELL, C.J., and ELDRIDGE, RODOWSKY, CHASANOW *, RAKER, WILNER and CATHELL, JJ.

BELL, Chief Judge.

The sole question presented by this case is whether a trial court's closure of a courtroom during the testimony of a 14–year–old victim of sexual abuse, without making a case-specific finding of fact on the record demonstrating a sufficient basis for the action, violates the accused's Sixth Amendment right to a public trial. In an unreported opinion, the Court of Special Appeals concluded that, under the facts of this case, the trial court's actions did not violate the accused's right to a public trial. We shall reverse.

## I.

The petitioner, Robert Ciana Carter, was charged in a nine count indictment with rape, second and third degree sexual offenses, attempted sodomy, and child abuse. The child complainant, the daughter of the petitioner's wife, was three years-old when the alleged abuse began and 14–years–old at the time of trial. The case was tried to the court, sitting without a jury. Immediately following opening statements, intending to call the victim as its first witness, the State requested the trial court to clear the courtroom of spectators during the child's testimony. The colloquy on the point was as follows:

---

* Chasanow, J., now retired, participated in the hearing and conference of this case while an active member of this Court but did not participate in the decision and adoption of this opinion.

"THE COURT: All right, let's call your first witness, then, and we'll deal with the suppression hearing later.

[State's Attorney]: Thank you, Your Honor. Your Honor, the State's first witness would be the child .... The State would ask that during the child's testimony the courtroom be cleared of spectators.

THE COURT: All right, all spectators should leave the courtroom at this point, please. And if there are any witnesses present, there's been a motion to sequester anyway, so they're going to have to leave in any event.

[Defense counsel]: Your Honor, these are not witnesses in the case, just possibly character witnesses for any mitigation at the penalty phase.

THE COURT: Well, they're excused from the courtroom.

[Defense Counsel]: Well, for the record, Your Honor, and for the defendant, I would object to that.

THE COURT: And what's the basis of your objection to that?

[Defense counsel]: Your Honor, the basis of my objection is that he has the right to a public trial, it's a Constitutional right to a public trial, and this deprives him of that.

\* \* \* \* \*

[State's Attorney]: Your Honor, in child abuse cases I would proffer that the court has a certain amount of discretion in protection of the child and in sensitivity to the child. In this case the child, who is now is 14, will be talking about her first sexual experiences, which began at age three, so I think it's within your Honor's discretion to allow the courtroom to be cleared simply for the child's testimony, not for anyone else's.

THE COURT: Yeah, I think that the child's privacy and tender age in this instance certainly outweighs any significance attaching to the public trial, so I'll stand by my decision.

[Defense counsel]: For the record, although the child was extremely young when these allegations occurred, the child is now 14 or 15.

[State's Attorney]: She'll be 15 on April 8 th.

THE COURT: Right, she's 14 years old.

[Defense counsel]: I just wanted you to understand that.

THE COURT: I knew that. I know she's not three or four years old, I know she's 14. Quite frankly, I would be more inclined to grant the motion when the child is 14 than when the child is three, so it doesn't change my thinking at all. I knew she was 14. All right, [State's Attorney], call your first witness."

The court cleared the courtroom, after which the child testified. After her testimony, the court called a brief recess to allow the petitioner's family to return to the courtroom and the State's case continued with the testimony of the child's mother and an investigating officer from the Harford County Sheriff's Office.

The petitioner was convicted of three counts of second degree sexual offense, three counts of third degree sexual offense, and child abuse. He was sentenced to 105 years imprisonment, with all but twenty years suspended and five years probation upon release. The petitioner appealed to the Court of Special Appeals, arguing that the trial court's exclusion of all spectators from the courtroom violated his right to a public trial. As we have seen, the Court of Special Appeals affirmed the judgment of the circuit court. It held "that the State's proffer satisfied the court's mandate to find a specific compelling need to justify clearing the courtroom." Alternatively, the intermediate appellate court determined that "the victim's trial testimony ultimately bore out the appropriateness of the court's decision to clear the courtroom." We granted the petitioner's Petition for Writ of Certiorari to consider this important issue. For the reasons that follow, we shall reverse the judgment of the intermediate appellate court and remand for a new trial.

## II.

The petitioner contends that the trial court violated his Constitutional right to a public trial by clearing the courtroom during the testimony of the 14–year–old complainant. Arguing that this Court as well as the United States Supreme Court has recognized the significance and value of public trials, *see Baltimore Sun v. Colbert*, 323 Md. 290, 297–98, 593 A.2d 224 (1991)(citing *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 573, 100 S.Ct. 2814, 2825, 65 L.Ed.2d 973 (1980)), he urges this Court to reverse the judgment of the Court of Special Appeals. The petitioner also contends that the intermediate appellate court's decision in this case is inconsistent with its own, subsequent precedent. *See Walker v. State*, 121 Md.App. 364, 709 A.2d 177 *cert. denied*, 351 Md. 5, 715 A.2d 964 (1998). Finally, the petitioner proffers in support of his argument, decisions of other courts that have found a violation of the right to a public trial where trial courts have excluded spectators under similar circumstances. *See e.g., Guzman v. Scully*, 80 F.3d 772 (2d Cir.1996); *Davis v. Reynolds*, 890 F.2d 1105 (10 th Cir.1989).

The respondent, the State of Maryland, maintains that the Court of Special Appeals reached the correct result. It asserts that, when considering and weighing the accused's right to a public trial against the State's interest in protecting a young victim from the embarrassment and anxiety of testifying in public, the trial court properly struck a balance in favor of courtroom closure. Further, citing *Watters v. State*, 328 Md. 38, 612 A.2d 1288 (1992), *cert. denied*, 507 U.S. 1024, 113 S.Ct. 1832, 123 L.Ed.2d 460 (1993), with which, it asserts, this case differs factually, the State claims that, because the closure of the petitioner's trial was to protect a child sex offense victim, was of limited duration, and was supported by adequate findings, the trial court's ruling did not violate the Sixth Amendment. The State also contends that the trial court's conduct satisfied the four-part test enunciated by the United States Supreme Court in *Waller v. Georgia*, 467 U.S. 39, 104 S.Ct. 2210, 81 L.Ed.2d 31 (1984). There, the Court stated: "[T]he party seeking to close the hearing must advance an

overriding interest that is likely to be prejudiced, the closure must be no broader than necessary to protect that interest, the trial court must consider reasonable alternatives to closing the proceeding, and it must make findings adequate to support the closure." *Id.* at 48, 104 S.Ct. at 2216, 81 L.Ed.2d at 39. Accordingly, the State urges this Court to affirm the judgment of the Court of Special Appeals.

### III.

 We begin our analysis with the fundamental rule that criminal proceedings are presumptively public. U.S. Const. amend. VI. ("[i]n all criminal prosecutions, the accused shall enjoy the right to a ... public trial...."); *Waller v. Georgia, supra,* 467 U.S. at 44–45, 104 S.Ct. at 2214, 81 L.Ed.2d at 37 (1984); *Press–Enterprise Co. v. Superior Court,* 464 U.S. 501, 514, 104 S.Ct. 819, 826, 78 L.Ed.2d 629, 635 (1984); *Globe Newspaper Co. v. Superior Court,* 457 U.S. 596, 605, 102 S.Ct. 2613, 2619, 73 L.Ed.2d 248, 256 (1982); *Richmond Newspapers, Inc. v. Virginia,* 448 U.S. 555, 584, 100 S.Ct. 2814, 2831, 65 L.Ed.2d 973, 994 (1980); *Baltimore Sun v. Colbert,* 323 Md. 290, 299, 593 A.2d 224, 227 (1991). The right to a public trial, likely a response to the threat posed by secret trials conducted by the Spanish Inquisition and the English Court of Star Chamber, is deeply rooted in the English common law tradition to promote fairness and public confidence in criminal proceedings, upon which our system of justice is based. The Supreme Court, in *In re Oliver,* 333 U.S. 257, 268–70, 68 S.Ct. 499, 505–06, 92 L.Ed. 682, 691–92 (1948), has observed, and commented upon, the historical significance of a public trial:

> The traditional Anglo–American distrust for secret trials has been variously ascribed to the notorious use of this practice by the Spanish Inquisition, to the excesses of the English Court of Star Chamber, and to the French monarchy's abuse of the lettre de cachet. All of these institutions obviously symbolized a menace to liberty. In the hands of despotic groups each of them had become an instrument for

the suppression of political and religious heresies in ruthless disregard of the right of an accused to a fair trial.

That Court has also recognized that, "a public trial is for the benefit of the accused; that the public may see he is fairly dealt with and not unjustly condemned, and that the presence of interested spectators may keep his triers keenly alive to a sense of their responsibility and to the importance of their functions." *In re Oliver*, 333 U.S. at 271, 68 S.Ct. at 506, 92 L.Ed. at 693 (1948). The Court described another value of public trials as follows:

"Whatever other benefits the guarantee to an accused that his trial be conducted in public may confer upon our society, the guarantee has always been recognized as a safeguard against any attempt to employ our courts as instruments of persecution. The knowledge that every criminal trial is subject to contemporaneous review in the forum of public opinion is an effective restraint on possible abuse of judicial power."

*Id.* at 270, 68 S.Ct. at 506, 92 L.Ed. at 692.

This Court too has acknowledged the historical significance, and critical function, that a public trial serves in the administration of justice. *Dutton v. State*, 123 Md. 373, 91 A. 417 (1914). In that case, we emphasized that "[u]nder no circumstances should a trial be so conducted as to have the appearance of a Star Chamber proceeding. . . ." *Id.* at 389, 91 A. at 422–23. We then quoted Cooley's Constitutional Limitations 312 for the general rule:

" 'It is also requisite that the trial be public. By this is not meant that every person who sees fit shall in all cases be permitted to attend criminal trials, because there are many cases where, from the character of the charge, and the nature of the evidence by which it is to be supported, the motives to attend the trial on the part of portions of the community, would be of the worst character, and where a regard to public morals and public decency would require that at least the young be excluded from hearing and witnessing the evidence of human depravity which the trial

must necessarily bring to light. The requirement of a public trial is for the benefit of the accused; that the public may see he is fairly dealt with, and not unjustly condemned, and that the presence of interested spectators may keep his triers keenly alive to a sense of their responsibility, and to the importance of their functions; and the requirement is fairly met with, if, without partiality or favoritism, a reasonable proportion of the public is suffered to attend, notwithstanding that those persons whose presence could be of no service to the accused, and who would only be drawn thither by a prurient curiosity, are excluded altogether.' "

*Id.* at 388, 91 A. at 423. *See also Hughes v. State,* 288 Md. 216, 222, 421 A.2d 69, 73 (1980).

We have recognized, however, that the right to a public trial is not absolute. *Baltimore Sun Co. v. Colbert, supra,* 323 Md. at 300, 593 A.2d at 228. In *Colbert,* the *Sun* challenged a trial court order to close the courtroom to the media and the public during pretrial criminal proceedings. We reversed the order of the trial court, holding that it had failed to make the required findings prior to ordering closure. *Id.* at 305, 593 A.2d at 231. While *Colbert* was based upon First Amendment principles, this Court's discussion of the presumption of openness in criminal proceedings, the burden placed upon the party moving for closure, and the appropriate balance to be struck between the defendant's rights and exclusion of the public is instructive. On these points, the Court stated:

"The presumption that pretrial proceedings are open to the public can be overcome only by an "overriding interest," such as an accused's right to a fair trial. *Press–Enterprise I, supra,* 464 U.S. at 510, 104 S.Ct. at 824.[1] The party moving for closure has the burden of proving that "higher values" will be infringed by publicity; that closure of the courtroom will prevent such prejudice; and that reasonable alternatives to closure cannot protect the asserted values.

---

1. *Press–Enterprise Co. v. Superior Court,* 464 U.S. 501, 104 S.Ct. 819, 78 L.Ed.2d 629 (1984).

*Press–Enterprise II, supra,* 478 U.S. at 13–14, 106 S.Ct. at 2742–43.[2] Where, as in this case, the right asserted in support of closure is a defendant's Sixth Amendment right to a fair trial, a hearing may be closed only if specific findings are made on the record."

323 Md. at 302, 593 A.2d at 229–30. In the case *sub judice,* an accused asserts his Sixth Amendment right to a public trial in *opposition* to closure. We believe, and so hold, that the same analysis applies.

■ In *Watters v. State, supra,* recognizing current Supreme Court jurisprudence, we expounded on the test for determining whether courtroom closure was permitted in light of the Sixth Amendment right to a public trial. There we stated:

"The Supreme Court has ardently protected a criminal defendant's right to a public trial and has addressed the circumstances which may justify infringement of this right and the standard by which these factors must be balanced. *See Waller v. Georgia, supra,* and *Press-Enterprise Co. v. Superior Court of Cal., supra.* The Court in *Press–Enterprise* held that under the First Amendment, a trial could be closed only to protect an overriding governmental interest through a narrowly tailored order. 464 U.S. at 510, 104 S.Ct. at 824. The *Waller* Court noted that the express rights of a defendant under the Sixth Amendment were at least as extensive as the implied rights of the public and press under the First Amendment, and thus applied the same test to a Sixth Amendment challenge to closure. 467 U.S. at 46, 104 S.Ct. at 2215. *Under present law, therefore, whether objection to closure is made by the defendant or the press, the public may only be constitutionally excluded from a trial ... pursuant to a narrowly tailored order necessary to protect an overriding state interest.*"

---

**2.** *Press–Enterprise Co. v. Superior Court,* 478 U.S. 1, 106 S.Ct. 2735, 92 L.Ed.2d 1 (1986).

328 Md. at 45, 612 A.2d at 1291 (emphasis added). In that case, without the knowledge and consent of the trial judge or parties, a deputy sheriff excluded the public, including members of the defendant's family and possibly representatives of the press, from the courtroom during voir dire and jury selection in a highly publicized murder trial. *Id.* The Court held that the defendant's Sixth Amendment right to a public trial was violated.

The Supreme Court has required a similar analysis when balancing the State's interest in protecting child sex abuse victims against the accused's Sixth Amendment right of confrontation.[3] *Maryland v. Craig,* 497 U.S. 836, 110 S.Ct. 3157, 111 L.Ed.2d 666 (1990). In that case, the United States Supreme Court reviewed a Maryland statutory procedure[4] under which the testimony of an alleged victim of child sexual abuse may be taken outside of the courtroom, away from the accused, and displayed via closed circuit television to the court. Examining the constitutionality of this statutory procedure in light of the accused's Sixth Amendment right of confrontation, the Court recognized that, under limited circumstances, the right to a public trial may give way to a State's interest in the "physical and psychological well-being of a minor victim." *Id.* at 853, 110 S.Ct. at 3167, 111 L.Ed.2d at 683.[5] The Court, however, held that, before setting aside the defendant's Sixth Amendment right of confrontation, the State

---

**3.** Although the present case does not involve analysis under the confrontation clause, and does not require us to review Maryland's statutory procedure for closing a courtroom during a child/victim's testimony, we agree with the Court of Special Appeals that, "the types of inquiries ... the trial judge should make before invoking the closed circuit television testimony procedure, are similar to the types of inquiries that the court should make when weighing the interests of the child victim against the right of the defendant to a public trial."

**4.** *See* Maryland Code (1957, 1996 Repl.Vol., 1997 Cum.Supp.), Art. 27 § 774.

**5.** The Court continued, "[t]hat a significant majority of States have enacted statutes to protect child witnesses from the trauma of giving testimony in child abuse cases attests to the widespread belief in the importance of such a public policy." *Id.*

must make a case-specific showing, after "hearing evidence and determining whether use of the one-way closed circuit television procedure is necessary to protect the welfare of the particular child witness who seeks to testify." *Id.* at 855, 110 S.Ct. at 3169, 111 L.Ed.2d at 685. The Court also mandated that the trial court find that "the child witness would be traumatized, not by the courtroom generally, but by the presence of the defendant," and that "the emotional distress suffered by the child witness in the presence of the defendant is more than *de minimis, i.e.,* more than 'mere nervousness or excitement or some reluctance to testify.' " *Id.* at 856, 110 S.Ct. at 3169, 111 L.Ed.2d at 685 (citations omitted). On remand, while setting forth guidelines with more specificity than the Supreme Court had opted to do, *Craig v. State,* 322 Md. 418, 432–33, 588 A.2d 328, 335–36 (1991), we noted that "[a] judge's subjective and self-justifying recollections of a child's demeanor, absent support in the record, will not be enough to justify a finding that limits the right of confrontation." *Id.* at 428, 588 A.2d at 333.

More recently, the Court of Special Appeals, following the guidance provided in *Watters,* and *Craig,* reviewed a trial court's order to close a courtroom during criminal proceedings involving child sexual abuse. *Walker v. State, supra,* 121 Md.App. 364, 709 A.2d 177. In *Walker,* based only upon a proffer by the state, the trial court excluded the defendant's family members from the courtroom during the testimony of two alleged child sexual abuse victims. *Id.* at 368–69, 709 A.2d at 179. While reversing the trial court's order and remanding for a new trial, the intermediate appellate court held that it is incumbent upon the trial judge to conduct an examination on the record to ascertain the accuracy or validity of the State's proffer before clearing the courtroom of all of the defendant's family members. *Id.* at 373–74, 709 A.2d at 182.

In the case *sub judice,* the trial court did not interview the child victim, or anyone else, for that matter, on the record to determine the effect that testifying in front of the petitioner, his family, other members of the public, or the media would

have on the 14–year–old complainant. Nor did the trial judge take testimony or hear expert testimony to determine whether the child could, or would, suffer trauma, emotional distress, or embarrassment from testifying in open court. Furthermore, the trial court did not provide a case-specific discussion, on this record, of reasonable alternatives to closure. Instead, the trial court acted to close the courtroom on nothing more than a proffer by the State. As discussed above, these general statements are insufficient to demonstrate an overriding state interest or overcome the presumption of openness. In short, the court did not provide and, indeed, could not have provided, any case-specific reason for the closure. Closure of the court under these facts is essentially equivalent to the closure that the United States Supreme Court addressed in *Globe Newspaper Co. v. Superior Court,* 457 U.S. 596, 102 S.Ct. 2613, 73 L.Ed.2d 248 (1982). There, the Court invalidated a state statute requiring exclusion of the press and the public during the testimony of minor sexual abuse victims. While the Court in *Globe* recognized a compelling interest in safeguarding the physical and psychological well-being of minor victims of sex crimes and did not specifically prohibit closure in all such cases, the Court did require that a trial court make a particularized determination that a child witness is in need of protection before closing a trial to protect the child. *Id.* at 607–608, 102 S.Ct. at 2620–21, 73 L.Ed.2d at 258.

Alternatively, the Court of Special Appeals reasoned that, even if it disagreed with the trial court's "evidentiary methodology" prior to its ruling, because "the victim's trial testimony ultimately bore out the appropriateness of the judge's decision to clear the courtroom," the closure was appropriate. It relied on the child victim's statement in response to a question posed by the State at the conclusion of direct examination:

"I feel glad its [sic] that its all going to be over after today, but I'm glad the courtroom—that we didn't go public again, because I don't think I could last too much longer being hauled along by a rope, being pulled. I'm very nervous, but I'm just glad that, you know, after this testimony its [sic] all

going to be over and I'm not going to have to worry about if he's going to be calling and talking and everything. I mean, it put me on edge, the fact I knew he was still out and upset about this."

We do not agree with this analysis. An appellate court may not provide a post hoc rationale for why the trial judge would have closed the trial had it held a hearing and made findings. In *Waller, supra,* the United States Supreme Court expressly rejected such efforts by the Georgia Supreme Court, stating:

"The post hoc assertion by the Georgia Supreme Court that the trial court balanced petitioners' right to a public hearing against the privacy rights of others cannot satisfy the deficiencies in the trial court's record. The assertion finds little or no support in the record, and is itself too broad to meet the *Press–Enterprise* standard."

467 U.S. at 49 n. 8, 104 S.Ct. at 2217 n. 8, 81 L.Ed.2d at 40 n. 8. Even if there were a sufficient basis in this case to close the courtroom, ordinarily, the trial judge must have stated the reason or reasons for doing so on the record. Only in that way will the public be able to be aware of the reasons for closure, and an appellate court able to review the adequacy of those reasons.

The result we reach is consistent with the result reached by numerous federal [6] and state [7] courts. Moreover, under facts

---

**6.** *See e.g, Davis v. Reynolds* 890 F.2d 1105, 1110–11 (10th Cir.1989) (holding that trial court's order to exclude public from the courtroom during 16–year–old complaining witness' testimony, absent case-specific findings concerning condition of the witness, violated the defendant's Sixth Amendment right to a public trial); *Guzman v. Scully,* 80 F.3d 772 (2nd Cir.1996) (holding that the defendant's Sixth Amendment right to a public trial had been violated where, based only upon unsubstantiated statements, the trial court closed the courtroom to defendant's family and friends); *Rovinsky v. McKaskle,* 722 F.2d 197 (5th Cir.1984)(holding that before closing criminal proceeding to the public, the trial court must state reasons for doing so on the record); *Compare, United States v. Sherlock,* 962 F.2d 1349 (9th Cir.1989) (finding exclusion of defendant's family justified where trial judge observed the defendant's family members "making faces and giggling," causing the child/victim to become very apprehensive) *cert. denied* 506 U.S. 958, 113 S.Ct. 419, 121 L.Ed.2d 342 (1992); *Compare also, Woods v. Kuhl-*

almost identical to the present case, the Supreme Court of North Dakota held that a trial court must hold a hearing and make case-specific findings before excluding the public from the courtroom during the testimony of a child victim. *State v. Klem* 438 N.W.2d 798 (N.D.1989). In *Klem*, the defendant's 11–year–old adopted son was the alleged victim of child sexual abuse. During the child/victim's testimony, based on little more than a proffer by the State, the trial judge cleared the courtroom of all spectators, except courtroom personnel, attorneys, jurors, the parties, and a public media reporter. *Id.* at 799.[8] The defendant was subsequently convicted of two

*mann,* 977 F.2d 74 (2nd Cir.1992) (holding that exclusion of the defendant's family did not violate Sixth Amendment right to public trial where after a short colloquy on the record with the witness, the trial judge determined that the witness was "scared to death," after being threatened by at least one member of the defendant's family).

7. *See also, Renkel v. State,* 807 P.2d 1087 (Alaska App.1991)(holding that absent particularized findings supporting closure, closure of the court to the public during testimony of minor victims was reversible error); *Commonwealth v. Johnson,* 309 Pa.Super. 367, 455 A.2d 654, 662 (1982) (holding that under no circumstances is indiscriminate exclusion of the public proper); *People v. Revelo,* 286 Ill.App.3d 258, 221 Ill.Dec. 742, 676 N.E.2d 263, 269 (1996) (holding that the trial court must make express findings concerning the interest of the defendant's family members before excluding them from the court) *appeal denied,* 172 Ill.2d 562, 223 Ill.Dec. 199, 679 N.E.2d 384 (1997); *Ostolaza v. Warden, 26 Conn.App. 758,* 603 A.2d 768, 770, (1992) *cert. denied* 222 Conn. 906, 608 A.2d 692 (Conn.1992) (finding no compelling need for closure where trial court did not conduct hearing or make necessary findings to support closure during child's testimony); *State v. McRae,* 494 N.W.2d 252, 258–59 (Minn.1992)(holding that mere assertions by counsel concerning minor's ability to testify will not be sufficient to support closure); *Com. v. Martin,* 417 Mass. 187, 629 N.E.2d 297, 303 (1994)(court found trial court's reliance on assertions by counsel insufficient to close court). *But see, Bailey v. State* 729 So.2d 1255 (Miss. 1999), *rehearing denied* (March 25, 1999).

8. The Supreme Court of North Dakota quoted the following dialogue between the trial court and counsel and the state:

"MR. TESSIER: Because this is of a sensitive nature may I ask that the Courtroom be cleared of all extraneous personnel? It may be very distracting and very embarrassing for him in front of all these people and the people in the Courtroom may inhibit the testimony. "THE COURT: Any objections?

counts of gross sexual imposition with a child under 15 years old. *Id.* On appeal the Supreme Court of North Dakota reversed the trial court's conviction and remanded for a new trial reasoning that there is an "absolute requirement that before the trial court may exclude the public, it must articulate its reasons on the record and those reasons must be expressed in findings that enable a reviewing court to exercise its function." *Id.* at 801.

To be sure, as we have seen, the State does have an interest, a compelling one, in the physical and psychological well-being of child sex abuse victims. In this case, however, we have concluded that the trial court did not make the requisite case-specific finding necessary to justify the closing of the courtroom to the public. Consequently, it is unnecessary for us to consider or decide whether the court "narrowly tailored" it's order.[9]

---

"[Klem's attorney]: As the Court has stated, it's my client's case and I would like to discuss that with him.

"THE COURT: Please do.

"[Klem's attorney]: Excuse me, Your Honor. I'm sorry, he does object. I don't have any grounds to object however.

"THE COURT: Very well. I think I will clear the Courtroom. Let's go back and put it on the record."

*Klem,* 438 N.W.2d at 799.

**9.** As required under *Watters,* a closure order must be narrowly tailored to protect an overriding state interest. *Watters, supra,* 328 Md. at 45, 612 A.2d at 1291. Here, even if we were to review the scope of the order, the record is void of any indication that the trial judge explored an alternative to complete closure during the child complainant's testimony. *See, e.g., United States v. Farmer,* 32 F.3d 369, 370–71 (8 th Cir.1994) (finding temporary, partial closure of courtroom during testimony of 17–year–old sexual abuse victim given age of victim and nature of offense constitutionally permissible where immediate family and treating psychologist were permitted to stay); *United States v. Galloway,* 963 F.2d 1388, 1390 (10 th Cir.1992) (finding partial closure of courtroom during testimony of 18–year–old rape victim constitutionally permissible in view of victim's age and nature of crimes where press along with the defendant's family permitted to stay), *vacated on other grounds,* 56 F.3d 1239 (10 th Cir.1995); *Bell v. Jarvis,* 7 F.Supp.2d 699, 701–04 (E.D.N.C.1998) (upholding partial closure during testimony of 12–year–old victim of sexual offenses, where press and family of defendant permitted to stay); *United States ex rel. Morgan v. Lane,* 705 F.Supp. 410, 412–15 (N.D.Ill.1989) (upholding partial closure during

### IV.

 We now address the remedy available to the petitioner. The State contends that "[i]f this Court were to rule that the trial judge's findings were not sufficient, the proper remedy would be to remand the case with directions to supplement the record with facts and reasoning upon which the closure was based." We disagree.

 The denial of a public trial is a "structural defect affecting the framework within which the trial proceeds, rather than simply an error in the trial process itself." *Arizona v. Fulminante,* 499 U.S. 279, 310, 111 S.Ct. 1246, 1265, 113 L.Ed.2d 302, 331 (1991). When we have determined that the denial of a public trial has occurred, we have held that a new trial, rather than remand to supplement the record, is the proper remedy. *See Watters,* 328 Md. at 49, 612 A.2d at 1292. To reach this result, we relied most heavily on *Waller,* in which the Supreme Court, recognizing that, while "benefits of a public trial are frequently intangible, difficult to prove, or a matter of chance, the Framers plainly thought them nonetheless real," 467 U.S. at 49, n. 9, 104 S.Ct. at 2217, n. 9, 81 L.Ed.2d at 40, n. 9, and opined that "the defendant should not be required to prove specific prejudice in order to obtain relief for a violation of the public-trial guarantee," *Id.* at 49, 104 S.Ct. at 2217, 81 L.Ed.2d at 40. We also relied on *United States ex rel. Bennett v. Rundle,* 419 F.2d 599 (3rd Cir.1969), where the court recognized that a requirement that prejudice be shown "would in most cases deprive [the defendant] of the [public-trial] guarantee, for it would be difficult to envisage a case in which he would have evidence available of specific

testimony of 16–year–old victim of rape, sexual assault and incest trial where media and family could remain in the courtroom), *aff'd,* 897 F.2d 531 (7th Cir.1990) (mem.); *People v. Leggans,* 253 Ill.App.3d 724, 193 Ill.Dec. 12, 625 N.E.2d 1133, 1138–38 (1993) (partial closure upheld during testimony of eight-year old sex offense victim where media and those directly involved in the case permitted to stay), *appeal denied,* 155 Ill.2d 571, 198 Ill.Dec. 549, 633 N.E.2d 11 (1994); *State v. Fayerweather,* 540 A.2d 353, 354 (R.I.1988) (partial closure during testimony of six-year-old molestation victim, but family and press could remain).

injury." *Id.* at 608. This result is consistent with that reached by other courts that have considered the issue. *E.g. State v. Ortiz,* 91 Hawai'i 181, 981 P.2d 1127 (1999); *Williams v. State,* 736 So.2d 699, 704 (Fla.App.1999), *rehearing denied* (Jun 3, 1999); *Commonwealth v. Martin, supra,* 629 N.E.2d at 302; *State v. McRae, supra,* 494 N.W.2d at 260; *Mason v. Schriver,* 14 F.Supp.2d 321, 325 (S.D.N.Y.1998).

Under the facts in this case, we can presume, absent a showing to the contrary, that the trial court enforced the order to close the courtroom and, therefore, that the petitioner was prejudiced by the order. *See Watters, supra* 328 Md. at 49, 612 A.2d at 1292. *See also Waller, supra,* 467 U.S. at 49, 104 S.Ct. at 2217, 81 L.Ed.2d at 40–41. As we stated in *Watters:*

> "Indeed, the barring of spectators would make it impossible for the unknown individual to stray into the courtroom and reveal his information bearing on the case. To require proof of this by the defendant would be ironically to enforce against him the necessity to prove what the disregard of his constitutional right has made it impossible for him to learn."

*Id.* at 48, 612 A.2d at 1292–93 (citing *United States ex rel. Bennett v. Rundle, supra,* 419 F.2d at 608). Therefore, in the present case, we hold that the clearing the courtroom of all spectators during the child's testimony requires the granting of appropriate relief, under the facts of this case, a new trial.

## V.

We are mindful of the sensitive nature of testimony in any sexual abuse case. For any victim, particularly a child victim, testimony concerning sexual abuse may be disruptive and destructive to a family and may make the child/victim feel intimidated or threatened, not only in the courtroom but after the proceedings. In the balance, however, the defendant's right to a public trial may not be lightly disregarded. Because, in this case, the trial court excluded all spectators from the courtroom, and we cannot determine from the record

whether the closure was necessary or narrowly tailored to protect the State's overriding interest, we hold that the closure violated the petitioner's right to a public trial.

JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED. CASE REMANDED THAT COURT WITH INSTRUCTIONS TO REVERSE THE JUDGMENT OF THE CIRCUIT COURT FOR HARFORD COUNTY AND REMAND TO THAT COURT FOR NEW TRIAL. COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY HARFORD COUNTY.